**STATE of Missouri, Respondent,**

v.

**David Christopher PETERSEN, Appellant.**

**No. 62916.**

Supreme Court of Missouri, Division No. 2.

Oct. 12, 1982.

Motion for Rehearing or Transfer to Court En Banc Denied Nov. 9, 1982.

Loren R. Honecker, Springfield, for appellant.

John Ashcroft, Atty. Gen., Sara Rittman, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

David Christopher Petersen was convicted by a jury of first degree murder, section 565.003 RSMo 1978; his punishment was fixed at life imprisonment, section 565.008(2) RSMo. Sentence and judgment were rendered accordingly. Appellant charges the trial court erred in overruling his motion for judgment of acquittal notwithstanding the verdict asserting the evidence was entirely circumstantial and failed to exclude every reasonable hypothesis of appellant's innocence. Affirmed.

Stated favorably to the verdict, the evidence shows: Defendant and Terry Ann were married August 31, 1979; Terry Ann became pregnant within weeks. Marital problems arose shortly thereafter which culminated in several arguments during which the couple hit each other. Several witnesses testified that between August and December, 1979, they observed bruises on Terry Ann. Various witnesses testified that David was afraid his marriage would ruin his ministry and had stated he did not really want the marriage to work. The couple separated two times because of these difficulties; once for two weeks in October of 1979; again from December 5, 1979, to March 13, 1980.

Defendant testified he awoke after a dream early on the morning of June 23, 1980. He smelled gasoline and took his one week old baby to the living room. He returned to the bedroom and saw Terry Ann getting up. Just then the room was

engulfed in blue flames. Defendant stumbled backward, lost his glasses, but managed to find his way to the living room where he picked up the baby and ran outside. After laying the baby on the grass and realizing Terry Ann was not behind him, he attempted to reenter the house but was stopped by the fire. He then began yelling "Fire" and beating on his neighbors' doors.

One of defendant's neighbors called the fire department, having been alerted by the commotion. Defendant and the baby were examined at the scene by paramedics. The baby appeared uninjured, but defendant, who had been nude when the fire broke out, suffered first and second degree burns on his arms, legs, chest, and abdomen. No one who came into close contact with defendant or the baby immediately after the fire smelled gasoline on either; expert testimony indicated the smell of gasoline is not always apparent on victims of gasoline burns.

Several individuals investigated the scene of the fire in order to determine its cause. Those who concluded the fire was of incendiary origin based their conclusions on several factors. An arson investigator with the Springfield Fire Department based his opinion on two separate points of origin of the fire. The two fires left different burn patterns; and there was no ignition source at either point of origin. The Springfield Fire Marshal based his conclusion on these factors plus the presence of flammable liquids as indicated by burn patterns and the absence of a natural cause of the fire.

These experts presented additional evidence indicating the presence of flammable liquids at the point of ignition. Several containers of flammable liquids were found at the scene. There was no evidence that the wiring, the heater or any natural phenomenon ignited the fire. The smoke emanating from the fire was a color consistent with smoke from burning gasoline. The condition of some burned furniture indicated the fire burned quickly; a finding consistent with a gasoline-fueled fire. A plastic container of gasoline was in defendant's bedroom when the fire broke out. After the fire, it was found lying on its side. A leak was discovered around the spout; there was no evidence that the can leaked prior to the fire. A broken kerosene lantern, which defendant contends ignited gasoline fumes, was found lying on the bedroom floor. Defendant told several persons the lantern had caused the fire; its location was not at the point of origin of either fire.

Defendant's cousin testified she had cleaned and vacuumed the apartment a short time before the fire. She stated she had seen the gasoline container, but smelled no gasoline, found no moist spot in the rug, nor observed any puddles of gasoline. She further stated she had never seen the container in the bedroom.

The record indicates defendant changed his wife's life insurance policy shortly before the fire so that it would pay him upon the death of his wife with no consideration given the cause of death. The parties stipulated to the victim's cause of death as burning of the entire body, heat, and inhalation of carbon monoxide.

In a prosecution for murder committed in the perpetration of arson, it is necessary that the state establish a fire occurred which caused the death of the victim; the accused had the opportunity to set the fire; the fire was of incendiary origin; and the accused was the incendiary. *State v. Paglino,* 319 S.W.2d 613, 621 (Mo. 1958). The state may establish the incendiary nature of the fire and that the accused was the incendiary through circumstantial evidence. *Id.* at 621; *State v. Pierson,* 343 Mo. 841, 856, 123 S.W.2d 149, 155 (1938). When the state adduces circumstantial evidence to establish the guilt of the accused, the circumstances on which the state relies must be consistent with each other and the guilt of the accused. Such evidence must be inconsistent with a hypothesis of innocence and exclude every rational hypothesis except that of guilt. *State v. Bunton,* 453 S.W.2d 949, 952 (Mo.1970); *State v. Paglino,* 319 S.W.2d 613, 622 (Mo.1958); *State v. Whitaker,* 275 S.W.2d 316, 320 (Mo.1955). The stated evidence demonstrates a submis-

sible case of arson-murder under the cited authorities.

The existence of the fire and the cause of the victim's death were stipulated by the parties. Therefore the burden was on the state to establish the incendiary nature of the fire and defendant's participation in the commission of the arson. The evidence established these elements and excluded any rational hypothesis of innocence. The expert testimony established the incendiary nature of the fire. The evidence shows the fire burned in two parts of the house; there was no connecting burn between these fires, indicating each had a separate origin. There was no source of ignition at either point of origin. The possibility the fires were ignited by the furnace, stove, or electrical system was ruled out by expert testimony. The only potential sources of ignition remaining are a butane lighter found at the scene of the fire and a kerosene lantern which defendant asserts was the cause of the fire.

Appellant's attempt to establish a rational hypothesis of innocence is flawed. His theory is based on the kerosene lantern being the point of origin of the fire. He contends the leaky gasoline container which was moved from the living room to the bedroom deposited gasoline in both locations. The fumes were subsequently ignited by the lantern causing a flash burn. This theory ignores the expert testimony concerning two separate points of origin which have no connecting burn. It also does not explain the testimony of the cousin who cleaned the apartment shortly before the fire. She smelled no gasoline and found no wet spots while vacuuming the bedroom and living room.

The defendant's participation in commission of the offense was established by the testimony of several witnesses. Evidence indicated he and his wife had serious marital problems which caused at least two separations in their short marriage. These difficulties led to several heated arguments during which each struck the other. Due to his problem marriage, defendant stated he did not want the marriage to work and

expressed concern that his marriage would prevent his return to the missionary field. Despite this ill will toward his wife and his desire to get out of the marriage, defendant testified he would not divorce Terry Ann. There was additional evidence indicating defendant would collect a large amount of money on a recently acquired life insurance policy which he had taken on Terry Ann's life.

Defendant's explanation of the origin of the fire was not consistent with expert testimony; and his credibility was placed in question by the testimony of Reverend Robert Perryman who said he had a bad reputation in the community for truth and veracity.

The judgment is affirmed.

WELLIVER, P.J., and SEILER, J., concur.