**STATE of Missouri, Respondent,**

v.

**Ronnie Ben LUTJEN, Appellant.**

**No. WD 34731.**

Missouri Court of Appeals, Western District.

Nov. 29, 1983.

**846**

William M. Chapman, Public Defender, Sedalia, for appellant.

John Ashcroft, Atty. Gen., David C. Mason, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P.J., TURNAGE, C.J., and SHANGLER, J.

SHANGLER, Judge.

The defendant was convicted by a jury of burglary first degree [§ 569.160, RSMo 1978], stealing without consent [§ 570.030, RSMo Supp.1982], and of the unlawful use of weapons [§ 571.030.1(4), RSMo 1982]. The court determined that the defendant was a persistent offender and sentenced him to consecutive terms of ten, three and two years on the respective counts. The defendant contends there was no substantial evidence to sustain the conviction on count III: Unlawful Use of a Weapon, and contends also that it was error to allow a prosecution witness to contradict alibi defense in rebuttal because the identity of the witness was not disclosed to the defendant.

We affirm the convictions.

On September 10, 1982, Waunita Karbinas returned to her rural home and noticed two men inside. A moment later one of them appeared at the backdoor with a shotgun pointed at her and said: "Lady, don't come any closer or I'll shoot." She asked who he was, and he simply warned again: "Don't come any closer or I'll shoot." Mrs. Karbinas retreated to her car, her baby in her arms. The two men then entered their car, one of them laden with a number of guns and other items taken from the residence. They drove away. Mrs. Karbinas noted the license number and notified the sheriff. The described license belonged to the defendant, and he was taken in arrest. Mrs. Karbinas identified the defendant as

the person who held her at gunpoint. At the trial, husband Karbinas testified that he owned two shotguns and three rifles and that those weapons were stolen from his home on September 10, 1982. He testified that the weapons were unloaded and that there was ammunition, but kept separately.

The defendant contends count III was not proven because the elements of the statute were not satisfied. The information charged violation of § 571.030, RSMo Supp. 1982:

Unlawful use of weapons—exceptions—penalties—

"1. A person commits the crime of unlawful use of weapons if he knowingly:

.    .    .    .    .

(4) Exhibits, in the presence of one or more persons, any *weapon readily capable of lethal use* in an angry or threatening manner". [emphasis added]

The defendant asserts that a *weapon readily capable of lethal use* means [in the case of a gun] a loaded firearm, and that the prosecution failed to prove that the weapon he exhibited was loaded at the time of the threat against the victim. He notes that [repealed] counterpart weapons § 571.-115 prohibited the exhibit of a *deadly weapon*—a term defined to encompass *any firearm, loaded or unloaded* both by decision and prescription of the Criminal Code. *State v. Dorsey,* 491 S.W.2d 301, 304[1] (Mo. 1973); § 556.061(9), RSMo 1978 & Supp. 1982. The defendant notes further that with the repeal of § 571.115 and the subsequent enactment of § 571.030, Missouri no longer condemns the exhibit of a *deadly weapon,* but rather now prohibits the exhibit of a *weapon readily capable of lethal use.* He argues that this deliberate reformulation intends to impose upon the prosecution the proof of a *loaded* firearm in order to sustain conviction of the offense under § 571.030.1(4), RSMo Supp.1982. He is prompted to this conclusion, *a fortiori,* by the MAI–CR 2d 33.01 *Definitions* that "readily capable of lethal use *[As used in*

*chapter 471]* means readily capable of causing death."

■ We assume for the moment the tendered exegesis as valid and find, even on those terms, that the offense was proven. There was substantial evidence, albeit circumstantial, that the shotgun was loaded when leveled at the victim in threat. The admonition, not once, but twice: "Lady, don't come any closer or I'll shoot" was an assertion that the weapon was loaded—and lethal. The circumstances in evidence allow the inference, also, that the shotgun was one of those taken from the interior premises and was loaded from the store of ammunition regularly kept nearby. This sufficed to prove the offense even on the terms the defendant proposes. *State v. Petersen,* 640 S.W.2d 123, 124[1–3] (Mo.1982).

■ We reject, however, the premise that to convict under § 571.030 the prosecution must prove that the firearm was loaded. That is because [as the court noted as to a predecessor statute in *State v. Riles,* 274 Mo. 618, 204 S.W. 1 (1918) and cited in *State v. Dorsey,* supra, l.c. 303]:

"To hold that it is incumbent upon the state to prove affirmatively that a pistol ... which is exhibited in a rude, angry, and threatening manner, is loaded, as a condition precedent to a conviction, would be practically to render the statute unenforceable. This is not only the view which this court has already taken [citations], but it is the view held in all other jurisdictions .... [citations]"

The MAI–CR 2d 33.01 definition of *readily capable of lethal use* to mean *readily capable of causing death* does not impede our conclusion that a loaded gun need not be proven. Common equivalents of the word *readily* are *easily* or *speedily.* Webster's Third New International Dictionary, Unabridged (1961). A gun is easily transformed into a lethal weapon by the insertion of bullets. The statute does not contemplate that the gun be already lethal [loaded], but only that the weapon can readily become lethal [by loading].

This analysis is supported by the commentary to § 16.030 of The Committee to Draft a Modern Criminal Code, Proposed Criminal Code for the State of Missouri (1973). This compendium propounds a comprehensive revision of the criminal laws, and in the process of reformulation, eliminates archaic terminology for more understandable language. *See* Preface, p. 6. One of the crimes The Proposed Criminal Code for the State of Missouri (1973) revises [as § 16.030] is the Unlawful Use of Weapons—meant to displace then § 564.610 [renumbered in the 1978 revision as § 571.115]. That proposed reformulation, however, was not enacted as part of the new Criminal Code which became effective on January 1, 1979, but was enacted thereafter in year 1981, and became present § 571.030—the section the information charges against the defendant. The provisions of the new Criminal Code are explicated section by section in the Comments of The New Missouri Criminal Code: A Manual for Court Related Personnel (1978). Since § 571.030 was not a component of that enactment, the Manual contains no comment as to any legislative intent of the purport of that statute or any of its terms. The essential terms of what later was enacted as § 571.030 [and earlier proposed as § 16.030 by the Proposed Criminal Code for the State of Missouri (1973)], however, are explicated by the commentary to that compendium, and serve the same authoritative purpose the later Manual subserves for the criminal laws enacted by the new Code.

Section 571.030, enacted in year 1981, supplants former unlawful use of weapons offenses—the concealed weapons and the use of a weapon to threaten § 571.115 [renumbered from § 564.610] among them. It reenacts those two components, among others, in a terminology more parsimonious and less obscure. The *dangerous and deadly weapon* verbiage of predecessor § 571.115 [formerly § 564.610] is replaced by *weapon readily capable of lethal use*—no doubt, to conform to the sense of judicial opinion that an unloaded gun, capable of ready function by insertion of bullets, was nevertheless a dangerous and deadly weapon. *See State v. Dorsey,* 491 S.W.2d 301 (Mo.1973), supra. This is explained in the commentary to § 16.030 of the Proposed Criminal Code for the State of Missouri (1973) [from which present § 571.030 directly derives]. Thus, as to the concealed weapon component of now § 571.030, the Comment [at p. 218] explains:

"The danger of carrying concealed weapons does not exist if the weapon is non-functional or not readily accessible. 'Non-function' means broken down or incapable of being fired if loaded. It remains a felony to carry a concealed but unloaded, functional firearm."

Then, the Comment goes on to explain the purpose for the substituted terminology throughout the unlawful use of weapons section [at 219]:

"The Code uses the descriptive phrase 'weapon readily capable of lethal use' . . . since it can be loaded quickly. *The Code provisions specifically mention 'weapon readily capable of lethal use' whenever the 'deadly weapon' limitation is needed."* [emphasis added]

It is evident that the *weapon readily capable of lethal use* merely conveys overtly what the discarded *dangerous and deadly weapon* terminology conveyed only covertly—that it is not only a firearm which is loaded, and so imminently lethal [deadly]—that: the statute punishes, but also a firearm which can be made lethal [deadly] quickly by a load of bullets.

The defendant contends also that the failure of the prosecution to disclose the identity of a rebuttal witness to his alibi was prejudicial error. The defendant, prior to trial, informed the prosecution of intention to rely on alibi as Rule 25.05 requires. The prosecution did not make the reciprocal disclosure, that it would call witness Fillicetti, a police officer, to rebut the alibi. The victim testified that the offense took place at about 6:30 p.m. on September 10, 1982. The defendant gave testimony that he worked that morning from 8:00 a.m. until 11:00 a.m., and that thereafter he attended a fair in Cole Camp from about 2:30 to 7:15

p.m. The prosecution then called Fillicetti in rebuttal. He testified that at 10 a.m. that day, he saw the defendant and two companions drive by the Fillicetti home headed south out of Sedalia. The defendant, whom Fillicetti had known for some thirteen years, looked directly at Fillicetti and waved. The defendant objected to the testimony on the ground that the prosecution called the witness without prior disclosure of intention to the adversary. This objection was not preserved in the motion for new trial and the defendant asks review under plain error Rule 30.20.

There is no usual requirement to disclose the identity of a rebuttal witness in advance of testimony. *State v. Curtis*, 544 S.W.2d 580, 581 (Mo. banc 1976). That rule is tempered, however, where the rules of discovery compel a defendant to disclose intention to rely on alibi. In such case, fundamental fairness prescribes that a prosecution witness, undisclosed to the defendant, may not be called to rebut the alibi. *Wardius v. Oregon*, 412 U.S. 470, 476, 93 S.Ct. 2208, 2213, 37 L.Ed.2d 82 (1973). Our law adopts this requirement of due process. *State v. Curtis*, 544 S.W.2d 580, 582[4] (Mo. banc 1976). The defense of alibi, of course, asserts that the accused was, at the time, at a place other than where the crime was committed and so could not have been the perpetrator. *State v. Pruett*, 425 S.W.2d 116, 118–119[3] (Mo.1968). The testimony by Fillicetti was not under any constraint of due process simply because it did not rebut alibi. The crime was committed at 6:30 in the afternoon. The defendant, by his testimony, attended a fair at another place on that day and at that very time [from 2:30 to 7:15 in the afternoon of September 10, 1982]. The testimony by Fillicetti was that he saw the defendant in a car at 10:00 o'clock *that morning,* and that the defendant was then still in Sedalia. That does not rebut the alibi that the defendant was at a fair some eight hours later when the crime was committed, but merely impeaches the testimony of the defendant that he was in the city of California at that hour. The testimony bore on the credibility of the defendant. It was within the discretion of

the trial court to receive the testimony. *State v. Mitchell,* 622 S.W.2d 791, 797[8] (Mo.App.1981).

The judgments are affirmed.

All concur.