**STATE of Missouri, Respondent,**

v.

**Minnye L. BURTON, Appellant.**

**No. WD 37018.**

Missouri Court of Appeals,
Western District.

Oct. 21, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 25, 1986.

Application to Transfer Denied
Jan. 13, 1987.

Sean D. O'Brien, Public Defender, and David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, C.J. Presiding, and TURNAGE and KENNEDY, JJ.

CLARK, Chief Judge.

Appellant was convicted by a jury of the offenses of murder in the second degree and armed criminal action. She was sentenced in accordance with the recommendation of the jury to life imprisonment on the charge of murder and three years on the charge of armed criminal action. The judgment and sentences are affirmed.

Those facts which are undisputed were that appellant, the victim, Gloria Bailey, and one Joyce Smith were on a street corner in Kansas City on an August evening drinking whiskey. An argument commenced and appellant and Joyce armed with bottles were about to engage in an altercation when Gloria intervened and separated them. The dispute among the three continued and appellant went to her apartment nearby where she obtained a shotgun. Returning, she pointed the gun at Gloria's head and fired killing Gloria instantly. Appellant then returned to her apartment which she shared with a male companion, Clarence Robinson. There was and is no dispute that the charge fired by appellant from the shotgun was the cause of Gloria's death.

## I.

In the first point of error, appellant contends the trial court should not have permitted the police officer witnesses to testify to an incriminating statement appellant made immediately prior to her arrest. Discussion of the point requires some review of additional facts.

When the police responded to the report of the shooting, the questioning of bystanders resulted in the identification of appellant as the assailant. The officers were directed to appellant's apartment where they found appellant and asked if she was Minnye Burton. Appellant answered by saying, "Yes, I shot Gloria." The point on appeal contends the statement should have been suppressed because the police had no warrant for appellant's arrest and their entry into appellant's dwelling, and the opportunity thereby to hear the admission, violated appellant's rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and Art. I, §§ 15 and 19 of the Missouri Constitution.

■ The first problem with the argument is, according to the state's evidence, the officers did not enter the apartment but confronted appellant and Robinson as they stood in the apartment doorway. The officers were in the hall and put the question of identity to appellant and heard her answer before any intrusion into the dwelling itself occurred. Even were it assumed, however, that the exchange occurred in the apartment itself and not in the corridor, the facts do not bring the case within the prohibition against forced entry into a private dwelling to effect a warrantless arrest condemned in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) which appellant cites.

■ Even under appellant's version of the facts, the officers were admitted to the apartment by Robinson voluntarily and the entry was not made with any advance purpose shown by the evidence to arrest appellant. It was only after appellant had admitted responsibility for the shooting that she was placed under arrest. The conduct prohibited under *Payton* is the nonconsensual entry into a dwelling for the purpose of making a warrantless arrest. The entry here, if any there were, was consensual and for the purpose of investigation.

■ Finally, the point presents no cognizable error warranting reversal because appellant did not suffer any prejudice by reason of admission of the statement. There was never any issue as to whether appellant had shot Gloria only a defense that appellant fired the shotgun because she believed Gloria was drawing her own weapon. The court did not err in denying the motion to suppress the statement and in overruling the objection to its admission.

## II.

In the second point, appellant argues that the court erred in failing to sustain her objection to the prosecutor's comment in opening statement that appellant was arrested "for the execution of Gloria Bailey." Exception is apparently taken to the word "execution" which appellant says engendered prejudice in the mind of the jury and was inflammatory.

■ The primary purpose of the prosecution's opening statement is to apprise the jury and the defendant of the facts which the state expects to prove. *State v. Kirksey*, 658 S.W.2d 60, 61 (Mo.App.1983). The prosecutor has a duty of good faith to describe in his opening statement only the material facts which will be proved by evidence. *State v. Turner*, 633 S.W.2d 421, 425 (Mo.App.1982). The scope and manner of opening statement is largely within the control of the court which must exercise discretion based on reliance upon the good faith of counsel. When error is claimed in the exercise of the trial court's discretion to control opening statement, no error requiring reversal will be found if the challenged statement refers to arguably admissible evidence and the reference was made in good faith with a reasonable expectation the evidence would be produced. *State v. Brooks*, 618 S.W.2d 22, 24 (Mo. banc 1981).

The evidence in this case was that after obtaining the shotgun, appellant pointed the weapon at the victim's head and fired from a distance of about ten feet virtually decapitating Gloria. The reference to the execution style of the killing was an observation fairly deducible from the facts and the court did not err in overruling appellant's objection.

### III.

Appellant next complains of the exclusion of evidence she attempted to elicit in cross-examination of two of the state's witnesses, Noland Hunter, a bystander, and Bonita Peterson, the medical examiner. The question put to witness Hunter was whether the victim's arms bore needle marks, an indication of the use of drugs. The inquiry of Dr. Peterson concerned the autopsy report and what evidence of drug ingestion was found. Both lines of inquiry were excluded on the ground the subject was irrelevant.

The gist of appellant's contention is that she should have been entitled to prove the victim was a drug abuser. The theory of the defense, as stated in appellant's brief was first that appellant believed Gloria normally to have been armed with a gun which constituted a threat to appellant when the victim engaged her in an argument. Second, appellant knew Gloria used drugs and alcohol. In combination, appellant sought to demonstrate the reasonableness of her fear of an armed person under the influence of drugs.

The trial court is vested with discretion to rule on the admission or exclusion of evidence where the issue is materiality and relevancy, *State v. Harlston*, 565 S.W.2d 773, 782 (Mo.App.1978), and in the absence of clear abuse of that discretion, a trial court's ruling to admit or exclude evidence will not be disturbed. *State v. Dunn*, 615 S.W.2d 543, 549 (Mo.App.1981). Evidence is relevant if it logically tends to support or establish a fact in issue. *State v. Berry*, 609 S.W.2d 948, 954 (Mo. banc 1980).

In this case, the question of whether Gloria Bailey was a user of drugs was irrelevant, despite the theory of the defense described above, because the defense laid no evidentiary foundation to show that the victim was prone to violence in consequence of her drug use or that she had exhibited any drug associated abnormalities on the night in question. In fact, appellant herself testified that she knew of no reputation of the victim in the community for violence. The evidence tending to show Gloria Bailey was addicted to drugs or had used drugs during an interval prior to the homicide therefore had no bearing on the issues for decision by the jury and the court correctly ruled to exclude it.

### IV.

The fourth point of error asserts that two photographs of the victim, one showing the massive head wound and the other showing the corpse in the street covered by a blanket, should not have been admitted because the gruesome character of the photographs and the prejudicial effect outweighed any probative value they may have had as evidence. The only argument made in support of the contention suggests that the lurid nature of the photographs coupled with appellant's willingness to stipulate to the facts proved by the photos was sufficient to warrant exclusion of them.

The trial court has broad discretion to determine admissibility of demonstrative evidence such as photographs. *State v. LaRette*, 648 S.W.2d 96, 105 (Mo. banc 1983). Demonstrative evidence which tends to establish any fact in issue or throw light on the controversy and aid the jury in arriving at a correct verdict is admissible. *State v. Burnfin*, 606 S.W.2d 629, 630 (Mo.1980). Where a defendant pleads not guilty, the state has the burden of convincing the jury beyond a reasonable doubt as to each element of the offense including, in a homicide case, the fact that the victim died as a result of the defendant's act. The fact that a defendant may offer to stipulate to the cause of death does not deprive the state of the right to have

relevant and material evidence received. *State v. Clemons*, 643 S.W.2d 803, 805 (Mo. banc 1983).

■ In this case, the photograph of the blanket covered body had no gruesome aspects at all and the objection to it on the ground stated is baseless. The other photograph does depict a repulsive object, a corpse with only a portion of the head remaining, but it accurately shows the violence and effect of the shooting. Appellant is not entitled to complain of a portrayal which is accurate merely because the consequences of the crime are shocking to persons of ordinary sensibilities. There was no error in the admission of the photograph in evidence.

### V.

In the next point, appellant says the court erred in permitting the state to call Diane Sims as a rebuttal witness. She says the identity of the witness was not disclosed to the defense under the continuing obligation to make discovery, Rule 25.08, and that the damaging statement of appellant recounted by the witness severely prejudiced appellant's case.

It appears to be undisputed that the state was unaware of the witness until the second day of trial, apparently after the defense had commenced to present its case. After appellant had testified that she shot Gloria in self-defense and for fear of injury by Gloria, the state presented the testimony of Sims in rebuttal. Sims testified she was present when the shooting occurred and that appellant said to Gloria she would blow her brains out and then appellant pulled the trigger.

■ There was no duty on the part of the state to make disclosure of the witness Diane Sims, even assuming such could practically have been done in the time between discovery of the witness and the presentation of her testimony. Where a rebuttal witness is not called to rebut a defense of alibi, there is no obligation to make disclosure and such witnesses may be freely called to contradict or impeach the defendant's own evidence. *State v. Lutjen*, 661 S.W.2d 845, 849 (Mo.App.1983). It is, of course, within the discretion of the trial judge to receive such testimony having in mind principles of fundamental fairness. In this case, there was neither unfairness nor surprise because the same testimony had been given during the presentation of the state's case by witness Joyce Smith.

### VI.

The sixth point raised by appellant attacks instructions on burden of proof given in conformity with MAI–CR2d 1.02 and 2.20 pattern instructions. Particularly, appellant contends those portions of the instructions which undertake to define reasonable doubt reduce the state's burden of proof below that required by Art. I, § 10 of the Missouri Constitution and the Fourteenth Amendment to the United States Constitution.

Missouri Approved Criminal Instructions are adopted by the Supreme Court under its constitutional rule making power, Rule 28.01, and are therefore the equivalent of rules in adjunct form. The inferior courts of Missouri have no jurisdiction to consider the validity of the practice rules of the Supreme Court because Art. V, § 5 of the Constitution has reserved the rule making power only to the Supreme Court. Moreover, the rules themselves leave no latitude to the inferior courts in determining whether an approved pattern instruction correctly states the law because Rule 28.02(c) applicable in criminal cases and Rule 70.02(b) applicable in civil cases, mandate the use of pattern instructions where applicable to the exclusion of all others.

■ Pattern instructions such as MAI–CR2d 1.02 and 2.20 at issue in this case are under the above analysis, the product of a Supreme Court Rule, and by rule, the instruction is declared to be immune from alteration by inferior courts. The rule making authority with its constitutional underpinning creates a product which is the equivalent of a statute in that the rule has the force and effect of law and, as Rule

19.02 recites, where a conflict exists between a statute and a rule, the rule prevails. The conclusion necessarily follows that a challenge to the validity of a pattern instruction approved by the Supreme Court and directed to be used, as here, in all criminal trials, is identical for jurisdictional purposes to a contention that a statute is invalid. This court lacks jurisdiction to consider an appeal which attacks the validity of a statute on constitutional grounds.

■ By reason of this jurisdictional problem, this case was submitted to the Supreme Court by this court with a recommendation for transfer prior to opinion under Art. V, § 10 of the Constitution of Missouri. The Supreme Court refused transfer. That mandate, taken in conjunction with the statement in *State v. Newlon*, 627 S.W.2d 606, 614 (Mo. banc 1982), that instructions given in the format of MAI–CR will not be deemed error indicates that reversible error in a criminal case may not be asserted if a MAI–CR instruction is used. Under this analysis, appellant's sixth point presents nothing for appellate review.

## VII.

In her final point, appellant contends the state should not have been permitted to argue a term of years as punishment for appellant during the second portion of closing argument because no term of sentence was mentioned during the first part of the prosecutor's argument. The details of the argument went as follows. In the first part of the closing argument on behalf of the state, the prosecutor merely concluded by saying that he would return after the closing argument by the defense and would then discuss punishment. True to this forecast, when the state closed its argument, the prosecutor made a plea for a term of years consistent with the taking of human life and mentioned sentences from three years to life on the charge of armed criminal action and ten, twenty and one hundred years or "whatever you see fit" on the murder charge.

■ The case authority on this subject is extensive and not easily reconciled or reducible to a single statement of principle. In general, the rule is that if a prosecutor intends to argue punishment to the jury, it must be discussed in the opening portion of the state's argument in order that defense counsel will have the opportunity to answer the argument. *State v. Maxie*, 513 S.W.2d 338, 345 (Mo.1974). This principle is, however, subject to the qualification that a prosecutor is allowed wide latitude in the course of argument which is subject to control upon exercise of the trial court's discretion to determine the impact and prejudice of argument. *State v. Taylor*, 626 S.W.2d 647, 648–49 (Mo.App.1981), citing *State v. Linder*, 613 S.W.2d 918, 926 (Mo. App.1981). *State v. Strubberg*, 616 S.W.2d 809, 818 (Mo. banc 1981) points out that the seriousness of error in argument depends on the circumstances of each case and that precedents are of minor value because of the actual differences among cases.

An example of argument somewhat similar to that made in the present case is found in *State v. Hale*, 371 S.W.2d 249 (Mo.1963). There, the prosecutor in the first portion of closing argument made an oblique or implied reference to penalty by stating that the crime was a serious one of murder in the second degree. This was coupled with the instruction given the jury stating the range of punishment for that offense, thus constituting the implied reference to punishment. Of primary importance in *Hale*, however, was the fact that in the second portion of closing argument, the prosecutor did not urge the jury to impose any particular number of years as a sentence. The argument was not deemed to have been prejudicial under those facts. Also, the determinative factor in *State v. Maxie, supra*, was the absence of an argument for a particular punishment. There the argument was much the same as was made in this case, a recitation of the various possible sentences and the comment that the term was for the jury to decide.

■ On the authority of *Maxie* and *Hale*, we conclude that the trial court in

this case did not abuse its discretion in denying appellant's objection to the state's closing argument. It is to be noted, however, that the decision is based only on the fact that no argument for a specific punishment was made and therefore no prejudice resulted. Had such an argument been undertaken in the second phase of the closing remarks to the jury by the state, it would have constituted error because the mere statement earlier that punishment would subsequently be discussed was insufficient ground upon which the defendant could have replied to rebut a later claim for a specific sentence.

The judgment is affirmed.

All concur.