**STATE of Missouri, Respondent,**

v.

**Lamar O. STREET, a/k/a Bill Russell, Appellant.**

**No. WD 38439.**

Missouri Court of Appeals, Western District.

May 26, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 30, 1987.

Janet M. Thompson, Columbia, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, Mo., for respondent.

Before CLARK, C.J., and
SHANGLER and NUGENT, JJ.

NUGENT, Judge.

Defendant Lamar Otis Street appeals his conviction for willfully failing to return a rented power saw with the intent to deprive the owner thereof, § 578.150,[1] and his sentence of ten years' imprisonment as a persistent offender. The single issue on appeal is defendant's claim that the trial court, in sustaining the state's relevancy objections to the defendant's questions to certain defense witnesses, including Ron Smith, denied the defendant due process of law and the right to present witnesses in his behalf.

Defendant contends that Ron Smith's testimony would have established that defendant had no connection with the missing power saw except to sign the rental agreement on Smith's behalf and that thereafter Smith had custody of the saw for use in his home repair business.

We affirm the conviction.

The following evidence was adduced at trial: On May 10, 1984, defendant Street, accompanied by Ron Smith and Smith's young son, entered Glad Rents in Gladstone. According to Craig Chambers, the store manager, defendant described a job breaking up concrete and asked to rent a suitable concrete saw. Both Mr. Chambers and George Kracht, the store owner, testified that the defendant was doing all the talking. However, Linda Kracht, co-owner of the store, testified that Mr. Smith had initially tried to rent the saw. When he could not do so because he lacked identification, he brought defendant into the store to complete the transaction on his behalf.

On the basis of that discussion, Mr. Chambers rented a 14-inch walk-behind concrete saw to defendant.

In connection with the execution of the rental agreement, the defendant Street presented an Arkansas driver's license bearing his picture and identifying him as "William Russell." He told Mr. Chambers that he lived at 5416 N.W. Hampton, Kansas City, Missouri, 64152, and listed his telephone number as 431-9559. He signed the rental agreement in the name of "William Russell." Then, the defendant put down a $100 cash deposit and went to the loading dock where several employees helped load the unwieldy saw into Ron Smith's pickup truck. At that time, one of the employees wrote down a description of the vehicle and its license number.

Moments later, the defendant returned to Glad Rents and explained to Mr. Chambers that he "did not need that big of a saw." He exchanged the 14-inch walk-behind saw for a new 12-inch hand-held "Wacker" concrete saw valued at about $580. He also picked up two saw blades worth $14.95 each. Mr. Chambers amended the rental agreement to reflect the exchange.

When the defendant had not returned the saw by the following day as required by the terms of the contract, Mr. Kracht tried to locate him by telephone, only to learn that the telephone number defendant had listed on the rental agreement was not a working number. Mr. Kracht then drove to the address defendant had given, and although "there was a house there," it was "somebody else's." The woman who answered the door had never heard of "William Russell."

Defendant never returned the concrete saw and its whereabouts was unknown at the time of defendant's trial nearly two years later. Mr. Chambers testified, however, that the defendant telephoned him after he was charged and taken into custody to attempt to talk him out of testifying. He first told Mr. Chambers that Ron Smith had the saw, but later recanted and admitted that he had taken the saw himself.

---

1. Revised Statutes of Missouri, 1986.

Ron Smith, called as a witness in defendant's behalf, admitted driving Mr. Street to Glad Rents and accompanying him inside the store. He indicated that defendant alone conducted the business. Defense counsel asked Mr. Smith whether he had ever used the saw, to which he replied, "Yes, sir." Then the court sustained the prosecutor's objection to the relevancy of that question. Mr. Smith denied having custody of the saw except on the day it was rented. He also denied stealing the saw and stated that after using the saw on the day it was rented, the defendant took him home "and that's the last time [he] seen [sic] Lamar or the saw."

At that point, defense counsel made the following offer of proof: Ron Smith offered testimony that, at the time, he made his living doing odd jobs and that an elderly man, Jim Stevens, had hired him to remove debris from two burned houses. As part of that job, Mr. Smith was to remove a piece of concrete at the Stevens property at 2402 Guinotte. Realizing that the slab was too big to carry, Mr. Smith enlisted defendant Street's help in obtaining a concrete saw. He and the defendant took the saw to Jim Stevens' property at 2402 Guinotte where he used it to cut the concrete slab. Afterwards, the defendant took him home.

Then, defense counsel offered in narrative form the testimony of Esther Felkins and Jim Stevens. According to defense counsel, Mrs. Felkins, who lived across the street from the Stevens property, would testify that she was not aware that any concrete had been cut or removed from that property. Mr. Stevens would testify that he never hired Ron Smith to cut or remove any concrete at 2402 Guinotte during the relevant time period.

At the conclusion of the defendant's offer of proof, the prosecutor objected that the proposed evidence was irrelevant and immaterial. The court sustained the objection.

When direct examination resumed, Mr. Smith identified a statement he made to the police and acknowledged telling them that after the saw was rented he and the defendant " 'went to 2402 Guinotte, Jim Stevens' property' " to cut a piece of sidewalk. Later, the defendant called Jim Stevens and his neighbor, Esther Felkins, to testify that Ron Smith never used the saw to cut a piece of concrete at 2402 Guinotte, but the court sustained the state's objections to their testimony. Specifically, the court sustained the objection to Jim Stevens' testimony because it constituted the defendant's attempt to impeach his own witness and it concerned a collateral matter. Mrs. Felkins' testimony was excluded on relevancy grounds.

### I.

The defendant claims that by frustrating his attempts to establish that the defendant merely facilitated Ron Smith's rental of the saw and that he otherwise had no connection with it, the court denied him due process of law and the right to present witnesses in his behalf, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, section 10, of the Missouri Constitution.

In essence, defendant claims that he might have been acquitted had the court not sustained the state's objections to questions posed to Ron Smith—first, in front of the jury and, later, in the offer of proof—regarding Mr. Smith's personal motive in accompanying defendant to Glad Rents to obtain a saw for use at the Steven's property.

The defendant seems to say that he could not have been found guilty under § 578.150 absent a showing that he rented the saw for his own purposes and that the jury could have inferred from Ron Smith's testimony that defendant's involvement in the crime was minimal, and that Smith, not he, wrongfully failed to return the rented saw.

We disagree. Even if Ron Smith's testimony had been allowed, it would not have constituted a defense to the crime of failure to return rented property. *Cf. State v. Baker*, 598 S.W.2d 540 (Mo.App.1980) (in prosecution for escape from a state institution, the trial court erred in refusing defendant's offer of proof constituting the defense of necessity). Section 578.150 provides in pertinent part:

1. A person commits the crime of failing to return leased or rented property

if, with the intent to deprive the owner thereof, he willfully fails to return leased or rented personal property to the place and within the time specified in an agreement in writing providing for the leasing or renting of such personal property.

2. It shall be prima facie evidence of the crime of failing to return leased or rented property when a person who has leased or rented personal property of another willfully fails to return or make arrangements acceptable with the lessor to return the personal property to its owner within ten days after proper notice following the expiration of the lease or rental agreement.

....

6. Failure to return leased or rented property is a class A misdemeanor unless the property involved has a value of one hundred fifty dollars or more, in which case failing to return leased or rented property is a class C felony.

The record fully supports defendant's conviction: The defendant made all the arrangements for the rental of the saw. He paid the security deposit, and did so after providing Glad Rents a false driver's license, a false name, and a false address and telephone number. Furthermore, the store manager testified that, once in police custody, the defendant called him in an effort to convince him not to testify. In so doing, the defendant first accused Smith of taking the saw but ultimately admitted that he had taken it himself.

Though Ron Smith was called as a defense witness, his testimony, in fact, supported the state. He stated that defendant made all the arrangements to rent the saw. Although he admitted using the saw on the day it was rented, he denied that he had stolen it and testified that he had not seen the defendant or the saw since that day.

Although the court did not allow Mr. Smith to testify as to the *details* of his use of the saw at Jim Stevens' property, the jury heard him testify that he made a state-

ment to the police, preserved in a police report, that he and defendant took the saw to 2402 Guinotte to cut a piece of sidewalk.

The trial court is vested with broad discretion in determining the relevance and materiality of evidence. Absent a clear showing of abuse of that discretion, an appellate court will not disturb the ruling of the trial court. *State v. Brown*, 718 S.W.2d 493, 493–94 (Mo.1986) (en banc); *State v. Burton*, 721 S.W.2d 58, 62 (Mo. App.1986).

■ Evidence is relevant and material if it logically tends to support or establish a fact in issue. *State v. Burton, supra,* at 62; *State v. Clark*, 711 S.W.2d 928, 932 (Mo.App.1986). Whether Smith might have used the saw was of no consequence in establishing defendant's guilt in this case, and the trial court did not abuse its discretion in limiting such testimony. Moreover, as the jury was allowed to hear Smith testify that he made a statement to the police regarding his use of the saw at Jim Stevens' property, defendant was not prejudiced by the court's ruling. Any error the court might have made in restricting Smith's testimony could only have been harmless. *State v. Gilmore*, 681 S.W.2d 934, 940 (Mo.1984) (en banc); *State v. Foley*, 629 S.W.2d 401, 403 (Mo.App.1981).

Likewise, the court did not err in excluding the testimony of Jim Stevens and Esther Felkins to the effect that Ron Smith did not, in fact, cut any concrete on the Stevens property, nor was he hired to do so.

As already noted, evidence on whether Mr. Smith used the saw was properly excluded in this case on the ground of relevancy alone. Defendant sought to introduce the testimony of Mr. Stevens and Mrs. Felkins for the apparent purpose of impeaching the credibility of Mr. Smith.[2]

■ The general rule is that one cannot impeach his own witness since he is considered to have vouched for the credibility of his witness. *Dement v. City of Bonne Terre*, 669 S.W.2d 278, 280 (Mo. App.1984). The rule is equally applicable

---

2. If defendant's strategy was to show that Ron Smith, not the defendant, had a personal motive in renting the saw—for use in his home repair business and, in particular, for use at the Ste-

vens' property—his efforts to impeach Mr. Smith's credibility seem to run counter to his purpose.

**200**

to any party to a case, whether civil or criminal. *State v. Byrd*, 676 S.W.2d 494, 502 (Mo.1984) (en banc). A witness may be impeached as hostile, however, by reason of answers inconsistent with previous statements that actually surprise the party propounding the questions to such a degree that the witness becomes for all practical purposes a witness for the other side. *Id.; State v. Armbruster*, 641 S.W.2d 763, 767 (Mo.1982).

Nevertheless, a party may contradict his own witness by independent evidence showing facts to be different from those testified to by that witness. "[E]xpressed another way, evidence relevant to the issues may not be excluded because it contradicts another witness called by the same party, whether such witness be friendly or hostile...." *Kinser v. Elkadi*, 674 S.W.2d 226, 233 (Mo.App.1984). *Cf. Draper v. Louisville & N.R. Co.*, 348 Mo. 886, 156 S.W.2d 626, 633–34 (1941). ("If A. put B. on the stand, and prove by him a certain set of facts, this does not preclude A. from putting C., D. or E. on the stand, and proving a different state of facts; but if A. puts B. on the stand as his only witness to prove a fact, and does prove it, then he is precluded from impeaching B., or from otherwise inviting the jury to disregard B.'s testimony.").

In the case before us, Mr. Smith did not surprise the defendant with an inconsistent statement thus warranting impeachment as a hostile witness. Assuming that in calling Mr. Stevens and Mrs. Felkins, defendant attempted to rely upon the rule expressed in *Kinser, supra*, to contradict rather than to impeach Mr. Smith, the court could properly have excluded the testimony as irrelevant: Evidence that Mr. Smith never used the saw at the Stevens' property does not tend to exonerate the defendant or otherwise prove or disprove any facts in issue here.

The conviction is affirmed.

All concur.