STATE of Missouri, Respondent,

v.

Johnny KEHNER, Appellant.

No. 53735.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 14, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 8, 1989.

Case Transferred to Supreme Court
April 18, 1989.

Case Retransferred to Court of
Appeals Oct. 3, 1989.

Original Opinion Reinstated
Oct. 10, 1989.

Claude Hanks, St. Louis, for appellant.

William L. Webster, Atty. Gen., William J. Swift, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

Appellant, Johnny W. Kehner, was charged with first degree murder, § 565.020 RSMo 1986, and armed criminal action, § 571.015 RSMo 1986. A jury convicted Kehner of second degree murder, § 565.021 RSMo 1986, and armed criminal action. The court sentenced Kehner to consecutive life sentences on each conviction. Kehner appeals.

The state's evidence was sufficient to support the convictions. Defendant shot and killed Bud Timmons with his rifle. The shooting occurred outside Timmon's home. It followed arguments about some money Timmons may have owed defendant. Defendant testified and claimed self defense. Defendant testified he took his family along when he went to see Timmons. According to defendant, Timmons approached defendant with a pistol in his right hand. Defendant claimed he shot Timmons in self defense to protect his family.

■ The error which requires a new trial involves allowing defendant's neighbor, Mike Taylor, to testify as a rebuttal witness "where the prosecutor failed to respond to the timely and proper discovery request of the appellant for evidence that was material to the appellants [sic] guilt." The state endorsed thirty-six witnesses. Mike Taylor was not endorsed. He did not testify in the first trial in which the jury could not reach a verdict. In the present trial he testified he gave defendant a ride to the St. Charles County Sheriff's Department to turn himself in on the charges. During the trip defendant described the shooting events in terms which amounted to a confession and totally destroyed the defense of self defense.

■ We reverse the decision of the trial court because the state failed to respond properly and fully to Kehner's disclosure request, which resulted in Kehner incurring a fundamental unfairness at trial. The basic object of the discovery process in criminal proceedings is to permit the defendant a decent opportunity to prepare in advance of trial and avoid surprise, thus extending to him fundamental fairness which the adversary system aims to provide. *State v. Scott,* 647 S.W.2d 601, 606 (Mo.App.1983) (relying on *State v. Sykes,* 628 S.W.2d 653, 656 (Mo.1982)).

■ The state failed to promptly respond to Kehner's clear request for discovery information related to witnesses to be called by the state at trial. The two relevant requests articulated in defendant's motion for discovery read as follows:

1. The names and last known addresses of persons whom the State intends to call as witnesses at any hearing or at the trial, together with their written or recorded statements, and existing memoranda reporting or summarizing part of, or all of, their oral statements....

5. Any police reports, *statements of Defendant—either oral* or written—line up information, reviews, notes and results, and the names of individuals in the line up. (Our emphasis).

The rules of criminal discovery are not mere etiquette nor is compliance discretionary. *State v. Scott,* 647 S.W.2d at 606. The obligation to make answer is peremptory. *State v. Stapleton,* 539 S.W.2d 655, 659 (Mo.App.1976). The state failed to respond to the discovery request and state its

intention of calling Mike Taylor as a witness in the trial. Defendant had no means to know of the unexpected testimony.

▮ While the state characterized Taylor as a rebuttal witness, thereby eradicating the requisite need to endorse, his testimony at trial, permitted over objection of Kehner, was evidence of an admission of guilt. Such evidence was direct evidence available to the state in its own case. Taylor testified that he met Kehner approximately six days after the shooting, at Barnes Hospital. From there, Taylor took Kehner, at Kehner's request, to St. Charles County Sheriff's Department. They stopped at a restaurant, as Taylor testified, "I wanted to buy him a sandwich ... before he turned himself into jail." Taylor further testified that during their stop at the restaurant and their ride to the sheriff's department they had an opportunity to discuss the incidents of June 24, 1986. Taylor's testimony as to the contents of their conversation was as follows:

> He described how he went down to Bud's [decedent's] house and called him outside and said he had something for him, and he said Bud came out with a pack of cigarettes, getting ready to light a—take a cigarette out of the pack of cigarettes, getting ready to light it, I guess, thinking they were going to talk, and John said he picked the rifle up off the seat and shot him, and Bud kept coming, he shot him again. Bud, I guess, realized that he was getting shot, and he turned and ran towards the house, and Johnny said he shot him again in the back, and he fell and was rolling around the ground like a stuck pig, he said.

Taylor testified the language he used was that of Kehner and not his own language.

▮ The notion of fundamental unfairness or prejudice is to be measured by whether the evidence requested in discovery would have affected the result of the trial. *State v. Estes*, 631 S.W.2d 121, 122 (Mo.App.1982). The present appeal follows a verdict and conviction in a second trial. Taylor was not a witness in the first trial. The first jury could not reach a verdict. The second trial, where the court admitted the testimony of Taylor, resulted in a conviction of second degree murder

§ 565.021 RSMo 1986, and armed criminal action, § 571.015 RSMo 1986. The testimony of Taylor was significant. It followed defendant's testimony. It destroyed the self defense theory. There can be no serious dispute that the breach of discovery duty of the state together with the failure to endorse Taylor as a state's witness hid the requested evidence. These combined tactics trapped defendant.

In defendant's motion for new trial, Kehner specifically asserted:

> the Court committed prejudicial error in allowing and permitting the prosecuting attorney on behalf of the state to introduce and offer evidence from Mike Taylor. ... [Mike Taylor's] evidence consisting in part of statements allegedly made by [Kehner] to the witness, Mike Taylor, immediately prior to the crime admitting to the witness, [Kehner's] implication to the crime that these statements were hightly [sic] prejudicial and did together with other errors result in inflaming the minds of this jury and did result in an erroneous verdict finding [Kehner] guilty of murder in the second degree. *The state failed to disclose* to [Kehner] at any time prior to trial that *the state had statements made by [Kehner] implicating [Kehner] in the shooting.* ... [Kehner] *had filed with the court and served a copy upon the state a Motion for Discovery seeking all statements* and written memorandums containing the contents of any statements made by the defendant as well as all other discovery material. (Our emphasis).

The trial court erred in admitting the testimony of Mike Taylor over the failure of discovery objection of Kehner. The state failed to respond to the appropriate discovery requests and screened the nature of the available testimony by not disclosing they had a witness who could testify about incriminating oral statements made by defendant and by not endorsing Taylor.

▮ We find it unnecessary to address the other points raised by Kehner. One other claim alludes to the testimony of Taylor but relates to a claim the Taylor testimony was not proper rebuttal evidence. We remand for a new trial because the state failed to properly respond to a

discovery request involving evidence which, if believed, proved guilt. The failure was unexcused and unexplained. The claim that the testimony was proper because it was offered in rebuttal wholly misses the mark. Discovery failures apply to rebuttal evidence in the same manner as all evidence. Defendant had a right, measured in terms of fair trial, to know before trial about the evidence of oral statements. Such evidence, in the state's case or in rebuttal, must be disclosed, if requested. Taylor was permitted to give testimony that should have been part of the state's case but was subject to objection on grounds of failure to endorse. The state was excused from the requirement to endorse and by its own failure to disclose had the dramatic benefit of such evidence.

The dissent in the present case suggests that the Western District has decided two cases that excuse the state from discovery where defendant requests the identity of any witness with knowledge of any statements, written or oral, attributed to the defendant. The dissent cites *State v. Burton*, 721 S.W.2d 58 (Mo.App.1986) and *State v. Lutjen*, 661 S.W.2d 845 (Mo.App. 1983). Neither of these cases are decisive of the disputed issue in the present appeal. In *State v. Burton*, the state did not know the identity of the witness offered in rebuttal until the second day of trial and the *same testimony* was presented in the state's case by another witness. *State v. Burton*, 721 S.W.2d at 63. Further, in the present case, the state was aware of the witness and the nature of the testimony the witness was prepared to give regarding statements in the nature of admissions made by the defendant. Finally, in the *Burton* case, the witness was present at the scene of the crime and may have been known or knowable by the defendant without discovery. All of these facts fully distinguish the *Burton* case from the present case.

In *State v. Lutjen* the court reviewed the issue only as a matter of plain error. The court found the testimony of the rebuttal witness whose identity was not disclosed pursuant to discovery did not rebut defendant's alibi defense. The testimony was relevant only on the matter of impeachment of the defendant's testimony. The testimony did not directly rebut the testimony of defendant. Further, the permitted testimony did not violate defendant's right to discovery protected by rule regarding the identity of a person who possessed knowledge of a written or oral statement given by defendant. Neither of these cases constitute a decision of the Western District in conflict with the decision of this court.

The balance of the dissent suggests that defendant was not prejudiced by the permitted testimony. The first trial involved evidence in support of the charges of murder and armed criminal action. The defense was self defense. The jury was unable to reach a verdict. In the second trial the state offered substantially the same evidence to prove the same charges. Defendant testified in support of his defense of self defense. The state then offered a witness, known to the state long before trial, who testified that the defendant made statements before the arrest on these charges which suggest he did not act in self defense. If accepted, this unforeseeable evidence totally destroyed the defense of self defense. The state offered no explanation or excuse for failure to comply with defendant's request for discovery of the existence of such witness and the nature of such testimony, being statements made by the defendant. If we accept the assumption the dissent is prepared to make, the court erred in its ruling, then it seems impossible that defendant was not prejudiced by permitting evidence which directly violated the discovery rule and directly rebutted the defense. The state's evidence from the witness was appropriately direct evidence of guilt and would have been proper evidence in the state's case, providing the state complied with the discovery rule by disclosing the witness and the nature of the testimony.

We remand for a new trial.

GRIMM, P.J., concurs.

GARY M. GAERTNER, J., dissents.

GARY M. GAERTNER, Judge, dissenting.

I respectfully dissent.

The majority opinion grants the defendant a new trial based upon the prejudice perceived from the State's violation of a discovery rule. The State failed to disclose that Mike Taylor would testify at trial regarding statements made by defendant. The trial court ruled that the State was not required to disclose the fact that Taylor would testify because his testimony was being presented on rebuttal. I would adopt the Western District's position that such a witness need not be disclosed unless the defendant asserts an alibi defense. *See State v. Burton,* 721 S.W.2d 58, 63 (Mo. App., W.D.1986); *State v. Lutjen,* 661 S.W.2d 845, 849 (Mo.App., W.D.1983). Nevertheless, assuming the trial court erred in its ruling, I disagree with the majority for another reason.

The trial court possesses broad discretion in ruling on discovery violations. *State v. Johnson,* 702 S.W.2d 65, 73 (Mo. banc 1985); *State v. Cotton,* 724 S.W.2d 649, 651 (Mo.App., E.D.1986). An appellate court will find an abuse of that discretion only when the evidence is admitted and results in fundamental unfairness to the defendant. *State v. Keeven,* 728 S.W.2d 658, 662 (Mo.App., E.D.1987). The majority states that "fundamental unfairness or prejudice is to be measured by whether the evidence requested in discovery would have affected the result of the trial." *State v. Estes,* 631 S.W.2d 121, 122 (Mo.App., S.D.1982). The court in *Estes* more fully stated, "fundamental unfairness is to be measured by whether the evidence *or the discovery thereof* would have affected the result of the trial." *Estes,* 631 S.W.2d at 122 (emphasis added). The court in *State v. Couch,*[1] more fully elaborated the factors to be considered in determining whether or not a defendant was prejudiced:

> The prejudice in turn depends upon the nature of the charge, the evidence presented, and the role the undisclosed testimony would likely have played in the preparation of a defense. If the evi-

dence was not of such a character as to raise a reasonable likelihood that *its prior discovery* would have affected the result of the trial, there is no error in failing to impose sanctions for its nondisclosure.

*State v. Couch,* 569 S.W.2d 789, 791 (Mo. App., W.D.1978). I believe the majority's focus on the effect that *the evidence* requested had on the outcome of the trial is misplaced. The probative inquiry is "whether the State's *discovery violation* resulted in fundamental unfairness or substantively altered the outcome of the case." *Johnson,* 702 S.W.2d at 73 (emphasis added). Our inquiry should focus on the effect of the discovery violation on the outcome of the trial, not the effect that the evidence had on the trial. Undoubtedly, Taylor's testimony had an effect on the jury.

Defendant does argue that his trial strategy, consideration of alternative defenses and ability to thoroughly cross-examine had been harmed by the discovery violation. But defendant fails to elaborate as to how trial strategy would have changed or what alternative defense would have been offered.[2] And, as will be set forth below, the record reveals that defense counsel appears more than ready to attack Taylor on cross-examination.

Defense counsel extensively cross-examined Taylor revealing that counsel anticipated and was prepared to vigorously impeach Taylor's testimony. Defense counsel cross-examined Taylor regarding whether or not he was sober the night of the shooting. Defense counsel next produced a transcript of a tape recorded telephone conversation between Taylor and defendant's fiancee, Tina Gellhausen, in which Taylor stated that he was drunk and high the night of the shooting. Defense counsel then cross-examined Taylor regarding Taylor's alleged attempts to convince Gellhausen to have sex with him. Defense counsel

---

1. The majority cites *State v. Estes* to support its prejudice analysis. *State v. Estes,* 631 S.W.2d 121 (Mo.App., S.D.1982). The court in *Estes* relied on *State v. Royal,* which in turn relied on *State v. Couch. See Estes,* 631 S.W.2d at 122; *State v. Royal,* 610 S.W.2d 946, 951 (Mo. banc 1981). *State v. Couch,* 569 S.W.2d 789 (Mo.

App., K.C.D.1978). I believe *Couch* more precisely states the operative principles than *Estes* or *Royal.*

2. I find it interesting that defendant asserts that his defense may have changed. He offered the defense of self-defense at the first trial.

sought to prove that Taylor had threatened Gellhausen that he would provide the State with unfavorable testimony if she did not have sex with him. Counsel again provided a transcript of a taped conversation in which Taylor made the alleged "threats." [3] Counsel also attempted to impeach Taylor with information regarding unrelated criminal matters in which defense counsel alleged that the prosecutor had promised leniency in exchange for Taylor's testimony. Defense counsel also questioned Taylor regarding his use of valium and alleged use of cocaine. Defense counsel further impeached Taylor's testimony with Taylor's prior testimony from defendant's bond hearing.

On surrebuttal, defense counsel presented the testimony of Carla Herder who was living with Taylor at the time of the shooting. She testified that Taylor was "intoxicated to the max" on the night of the shooting. Herder also contradicted Taylor's testimony regarding whether or not he received the murder weapon from Gellhausen the night of the shooting in order to dispose of it. Gellhausen also testified on surrebuttal that "[Taylor] said that he had something that could burn John, if I wouldn't sleep with him." Defense counsel's extensive cross-examination, presentation of surrebuttal testimony, and obvious preparation, *i.e.* the tapes and transcripts, makes it more than clear to me that defense counsel anticipated unfavorable testimony from Taylor.

Further supporting the State's argument that defense counsel was previously aware of Taylor's damaging testimony is revealed during an exchange on Taylor's cross-examination:

[Defense Counsel]: I called you, Mr. Taylor, did I not?

[Taylor]: I called you.

[Defense Counsel]: Did you tell me that you didn't know anything about this case and couldn't help anybody?

[Taylor]: No, I told you that—that what I knew would probably cause your case a great deal of problems, and you said: Well, just forget it, then, and I said I did

not want to lie and perjure myself and you said: Well, just forget it; don't worry about it.

Defense counsel then went on to question Taylor on another topic.

Therefore, even if the trial court erred in ruling the State had not violated a discovery rule, I do not believe that the discovery violation so prejudiced defendant to render the trial fundamentally unfair. Having also reviewed defendant's other points of error, I would affirm defendant's conviction.

---

**3.** Although the conversation contained language that could be construed as sexual advances, the transcript did not support defense counsel's characterization as "threats."