**STATE of Missouri, Respondent,**

v.

**RICHARDSON, Raymond Leroy, Appellant.**

No. 67720.

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 21, 1995.

Daniel Cytron, Benson Cytron, House Springs, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Raymond L. Richardson ("defendant"), appeals from the judgment entered by the Circuit Court of Jefferson Coun-

ty. Defendant was convicted of arson in the second degree, RSMo § 569.050 (1994), and was sentenced to five years imprisonment and assessed a $5,000 fine. We affirm.

Defendant was charged by information with knowingly setting fire to his home on June 24, 1993. A jury trial was held beginning November 1, 1994. The evidence adduced at trial is not in dispute.

Defendant owned a home at 8705 Highway 21 in Jefferson County. The home was purchased in 1980 for $28,000, approximately $16,500 of which remained due in the form of a home mortgage. Defendant had been a truck driver, earning approximately $45,000 a year, until he lost his job in December, 1992. Defendant was still unemployed at the time of the fire and collecting unemployment insurance. Defendant's wife worked at a local convenience store. After defendant lost his job, he took out a second mortgage on the home for the amount of $3,000. In February, 1993, defendant and his wife purchased an insurance policy on the house from Farmer's Insurance Group, which insured them for various losses up to the amount of $123,000. After the fire, defendant filed a claim for the full amount available under the policy.

The fire took place in the early morning hours of June 24, 1993. At the time of the fire, defendant was home alone, as his wife was working the late shift. Defendant testified he had been out earlier in the evening, drinking beer and playing pool, and arrived home at 11:00 p.m. He ate a sandwich and drank a glass of milk while watching television in the living room. He then retired to the bedroom. He awoke around 1:30 a.m. needing to use the rest room. When he opened the bedroom door, he found the hall filled with smoke. He returned to the bedroom, got dressed, went into the kitchen to retrieve three packs of cigarettes, then went outside through the front door.

A neighbor, Donna Stroder, testified she was awakened by the crackling noise from the fire. She looked outside, saw defendant's home on fire, and proceeded to call the fire department.

Gary Peters, Fire Chief of the Goldman Fire Protection District, testified he received the call at 1:43 a.m. and arrived at defendant's home three minutes later. When he arrived, he found the home engulfed in flame, and defendant sitting on the ground in the front yard. Peters also found a can containing what was later determined to be gasoline on the lawn. Peters testified he was suspicious of defendant's statement about the fire, as the amount of fire present when he arrived on the scene was inconsistent with an accidental burning. Additionally, defendant had a clean appearance with no evidence of soot or smoke on his clothes or person.

Fire fighters and fire trucks arrived on the scene and began to spray water on the fire. At some point, defendant jumped up onto the deck of the fire truck and knocked the water cannon out of the fire fighter's hands in order to direct it at another portion of the house where defendant claimed his belongings were located. Defendant's wife arrived home while the fire fighters were still fighting the fire. Peters testified he heard defendant say to her, "Honey, I did not start this fire."

Terry DeGuentz, the Deputy Fire Marshall for the Missouri Department of Public Safety, testified he reported to the scene at 3:50 a.m. He testified that he investigated the site to determine the cause of the fire. Based on his investigation of the debris and ruins, DeGuentz stated the fire was caused by a liquid accelerant being poured on the floors in the living and dining rooms. Ronald Malone, an investigator for a consulting firm hired by Farmer's Insurance, also testified that the fire was intentionally set by the pouring of an accelerant on the floor in the living and dining rooms.

On cross-examination, DeGuentz revealed that, when he spoke to defendant, he noticed defendant "had the odor of an intoxicating beverage," slurred his speech, had trouble keeping his balance while walking, and appeared to be "under the influence." Brian Heidbreder, a paramedic fire fighter on the scene, also testified he smelled alcohol on defendant.

At the close of the evidence, the trial court instructed the jury on one count of arson in the second degree. The trial court, at the request of the state and without objection

from the defendant, offered the voluntary intoxication instruction, MAI–CR3d 310.50, which was also submitted. The jury returned a verdict finding defendant guilty of arson in the second degree, sentencing him to five years imprisonment, and assessing a $5,000 fine against him. Defendant timely filed a motion for new trial, alleging error in the trial court's submission of the voluntary intoxication instruction and challenging the instruction's constitutionality. The trial court denied the motion, and defendant filed this appeal.

Defendant raises three points on appeal. First, he contends the trial court erred in submitting the voluntary intoxication instruction in violation of the Notes On Use, as the evidence was insufficient to warrant it. Second, defendant argues the trial court erred in submitting the voluntary intoxication instruction as proffered by the state because the state's instruction included the involuntary intoxication tail, which defendant argues was in violation of the Notes On Use and not warranted by the evidence. Third, defendant challenges the constitutionality of the voluntary intoxication instruction, MAI–CR3d 310.50.

■ Rule 28.02 governs the erroneous submission of jury instructions on appeal. Rule 28.02(f) states that the giving of an instruction in violation of any applicable Notess On Use shall constitute error, the prejudicial effect of which is to be judicially determined. The error is presumed prejudicial, unless clearly shown otherwise. *State v. Boyd,* 844 S.W.2d 524, 527 (Mo.App.E.D. 1992). Thus, we must first address whether the instruction was given in error, and if so, whether such error was harmless.

■ In his first point, defendant argues the trial court erred in submitting the voluntary intoxication instruction, MAI–CR3d 310.50, in violation of Notes On Use 3. The instruction read,

The state must prove every element of the crime beyond a reasonable doubt.

However, in determining the defendant's guilt or innocence, you are instructed that an intoxicated condition from alcohol will not relieve a person of responsibility for his conduct unless such condition was involuntarily produced.

Defendant claims the instruction can only be given if the evidence of intoxication was sufficient to support the inference that defendant was *impaired* because of his intoxication. This assertion may have had merit under the old Notess on Use, which did require that the evidence support such a finding before the instruction's submission was proper. Here, however, the Notes On Use 3 in effect at the time of trial stated the instruction "may be given when relevant evidence of voluntary intoxication has been admitted."

■ At trial, defendant wanted to offer evidence concerning his intoxicated state in order to account for his unreasonable behavior after the fire.[1] On cross-examination by defendant, Deputy Fire Marshall Terry DeGuentz testified that, when he spoke with defendant at the scene of the fire, defendant smelled of alcohol, slurred his speech, had trouble keeping his balance when walking, and appeared to be "under the influence." These characteristics are evidence of an intoxicated state. *See State v. McCarty,* 875 S.W.2d 622, 623 (Mo.App.S.D.1994). Furthermore, defendant testified he "was still affected by the alcohol pretty much so" after 6:00 a.m. the day of the fire.

The Notes On Use in effect at the time of trial stated the voluntary intoxication instruction may be given when relevant evidence of intoxication has been admitted. The defendant proffered the evidence to explain defendant's behavior at the scene. The applicable Notes On Use did not require the evidence be sufficient to support an inference of impairment due to the intoxication before the instruction would be warranted. Thus, the trial court did not err in submitting this instruction to the jury. Point denied.

1. Although the state filed a motion in limine requesting the trial court preclude defendant from introducing evidence of intoxication, defendant nonetheless elicited testimony about his possible intoxication, most of which was adduced without objection from the state. A motion in limine is merely an interlocutory order and is subject to change as the trial proceeds. *State v. Arnold,* 859 S.W.2d 280, 282 (Mo.App.E.D.1993).

For his second point, defendant argues the trial court erred in submitting the voluntary intoxication instruction as proffered by the state because it included the language, "unless such condition was involuntarily produced," referred to as the involuntary intoxication tail, in violation of the Notes On Use. *See* MAI–CR3d 310.50, Notes On Use 4 (1–10–94). We agree. However, although we find the trial court erred in submitting the instruction with the involuntary intoxication tail, we are convinced the error was not prejudicial.

Prejudice, interpreted in the context of erroneously given instructions, means having the potential of misleading or confusing the jury. *State v. Kehner*, 886 S.W.2d 130, 134 (Mo.App.E.D.1994). Rather than prejudice the defendant, the involuntary intoxication tail provided defendant with a potential defense. *See State v. White*, 738 S.W.2d 590, 593 (Mo.App.E.D.1987) (finding error to be harmless where self-defense instruction given though not supported by evidence). Neither the state nor the defense offered evidence to support the inference that defendant's intoxication was involuntary, but rather, defendant testified he had been out drinking beer earlier in the evening. The jury, after applying the instructions to the evidence presented, could only have set aside that part of the instruction referring to an involuntarily produced condition as inapplicable. That would put the jury in the same position they would have been in had the trial court not erred, and had the involuntary intoxication tail never been given.[2] Thus, we find the trial court's error to be harmless.

In his third point, defendant challenges the constitutionality of the voluntary intoxication instruction, MAI–CR3d 310.50.[3] Approved pattern instructions, promulgated

by the Missouri Supreme Court pursuant to Rule 28.01, are equivalent to statutes, having the force and effect of law. *State v. Burton*, 721 S.W.2d 58, 63 (Mo.App.W.D.1986). As such, this court is without authority to review the constitutionality of instructions given in the MAI–CR format. *Id.* at 64.

Based on the foregoing, the judgment of the trial court is affirmed.

SMITH, P.J. and RHODES, J. concur.

---

**2.** Defendant further contends that, because the trial court erred by including the involuntary intoxication tail in the instruction, the court was thereby bound to submit the involuntary intoxication instruction, MAI–CR3d 310.52, and to cross-reference it in the verdict director. This, however, amounts to nothing more than an argument that the trial court did not err properly.

**3.** The pattern instruction on voluntary intoxication given in this case was approved after the Missouri Supreme Court held the prior instruc-

tion to be unconstitutional. *See State v. Erwin*, 848 S.W.2d 476, 483 (Mo.banc 1993). The Court found the earlier instruction impermissibly relieved the state of its burden to prove every element of an offense beyond a reasonable doubt. *Id.* at 483. To remedy this problem, the first sentence, which requires the state prove every element of the crime beyond a reasonable doubt, was added to the instruction. *See* MAI–CR3d 310.50.