**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Warren Lamont WYNN,
Defendant-Appellant.**

**No. 46839.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 31, 1984.

Motion For Rehearing and/or Transfer to Supreme Court Denied March 8, 1984.

Application to Transfer Denied
April 16, 1984.

Charles M. Shaw, Shaw, Howlett & Schwartz, Clayton, for defendant-appellant.

Dan Crawford, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

NORWIN D. HOUSER, Special Judge.

This is an appeal by Warren Lamont Wynn, who was charged with burglary in the second degree, § 569.170, RSMo 1978, and stealing over $150.00, § 570.030, RSMo 1978, and as a persistent offender, § 558.-016.3, RSMo 1981. Convicted by a jury on both charges, and found to be a persistent offender, he was sentenced by the court to an extended term of twelve years on each charge, the sentences to be served concurrently.

Appellant claims error in connection with the extended term procedure; that the trial court failed to conduct the hearing on the question whether defendant was a persistent offender *before* the case was submitted to the jury as required by § 558.021.2, RSMo 1981, that the court failed to make findings of fact on the persistent offender issue as required by § 558.021.1(3), RSMo 1981; that the court failed to instruct the jury on the full range of punishment as required by § 557.036.2, RSMo 1981; and that appellant was prejudiced by having received a twelve-year sentence in a case in which the jury, if properly instructed on the range of punishment, may have assessed a punishment as low as one year in the county jail.

 The prescribed statutory procedure was not followed. It was the duty of the prosecutor under § 558.021.2, RSMo 1981 to make proof on the persistent offender issue prior to submission to the jury. Upon failure of the prosecutor to perform this duty at that time it was incumbent upon the trial judge, whose concern it is to see to it that all issues are disposed of in the final judgment, to call for a hearing on that issue and to conduct the hearing before instructing the jury. The persistent offender hearing issue was overlooked at the trial and ignored until 42 days later, when the defendant came on for sentencing. Neither the prosecutor nor the

judge remembered whether the State had "proven up (defendant's) priors" at the trial. Stating that he was doing so "just to be safe" the prosecutor offered in evidence certified copies of the judgments and sentences on the two separate and unrelated felony cases pleaded in the indictment. These were copies of records of the Circuit Court of St. Louis County, in which the instant convictions occurred. The judge declared: "The Court will take judicial notice of its own records—the judgment and sentence in Cause No. 355550, the State of Missouri vs. Warren Lamont Wynn, also known as Warren Lemon Wynn; and further its record in Cause No. 379203, the State of Missouri v. Warren L. Wynn, and the Court will find that the defendant is a persistent offender under the appropriate Missouri statute."

The failure to comply with the statutory procedure was more than a mere irregularity; it constituted error. The question is whether the error was prejudicial. We have concluded that the procedure employed, although subject to criticism if not censure, did not affect the substantial rights of appellant and is to be characterized as harmless error. *See State v. Chunn,* 636 S.W.2d 166 (Mo.App.1982). It is difficult to see how defendant suffered any actual prejudice by reason of the fact that the persistent offender hearing was conducted after instead of prior to submission to the jury. The central fact of importance and substance is that defendant is a persistent offender, as was amply demonstrated, in which case the Court, not the jury, determines punishment upon a finding of guilt. The subsection does not provide what results shall follow a failure to comply with its terms, and generally in such case a statute is held to be directory and not mandatory, *Garzee v. Sauro,* 639 S.W.2d 830, 832[1] (Mo.1982); *Hedges v. Department of Social Services of Missouri,* 585 S.W.2d 170 (Mo.App.1979), particularly in the case of a statute specifying a time within which an official act is to be performed, "with a view merely to the

proper, orderly and prompt conduct of the business." *State ex inf. Gentry v. Lamar*, 316 Mo. 721, 291 S.W. 457, 458 (1927). The State, by failing to introduce the persistent offender evidence at the prescribed time did not thereby waive its right to make proof thereof before sentencing. Nor was the State estopped to do so by reason of the manner in which the matter was handled. Defendant acquired no vested right to have the jury assess the punishment by reason of the failure to conduct the hearing at the prescribed time. It is true that if the proof had never been made the conviction would have to be set aside; in that event the failure to submit the question of punishment to the jury would have been fatal to the verdict; but it *was* made, even if tardily.

█ Certified copies of the previous convictions were admissible to establish prior convictions. *State v. Mays*, 622 S.W.2d 21, 23 (Mo.App.1981). In addition the Court took judicial notice of its own records, which is sufficient. *State v. Johnson*, 605 S.W.2d 151, 155 (Mo.App.1980).

The court's above-quoted observation at the conclusion of the hearing plus the recital in the court's judgment and sentence [1] constitute a sufficient finding of persistent offender within the requirement of § 558.-021.1(3), RSMo 1981.

█ Appellant's second point is that in final argument to the jury the prosecutor violated appellant's right against self-incrimination by referring to defendant's failure to testify. Defendant did not take the stand and did not introduce any evidence of any kind, oral or documentary.

The State sought to connect defendant to the crime by evidence that defendant's fingerprints were found and lifted from a beer mug the victim, Timothy Person, kept in his bedroom. Person kept loose change in the mug, which he habitually handled on a daily basis. When Person last handled the mug before he left his apartment on March 26, 1981, the day of the burglary, the mug was half full of quarters, dimes, nickels and pennies. After the burglary the contents of the mug were missing. A comparison of defendant's known fingerprints with fingerprints lifted from the mug revealed that they were made by the same person.

Defendant, an acquaintance of Person, had been in Person's apartment as a guest on five or ten occasions. The last time was some three or four weeks before March 26, 1981. Person testified that defendant had never been in Person's bedroom with his consent. In an attempt to intimate that defendant had access to the bedroom and may have left his incriminating fingerprints on the mug on one of those prior occasions, defendant's counsel on cross-examination of Person elicited the fact that in the previous summer Person had a barbeque party for about fifteen people; that defendant was present, and that the guests were in and out of the apartment all day. In final argument the prosecutor, to dispel any notion that defendant's fingerprints might have been placed on the mug during the barbecue party or at some other time prior to March 26, 1981, emphasized the State's evidence that defendant had never been in the bedroom prior to that date and argued that "the defendant has not presented one shred of evidence to the contrary"; that "(b)oth sides have an opportunity to present evidence, subpoena witnesses, put on experts, et cetera." Later in the argument the prosecutor said, "The defense has not presented one shred of evidence to the contrary. The defendant has not presented one iota of evidence. They have presented no evidence to explain how this defendant's fingerprints happen to be on this mug. * * * Not one explanation, no evidence." Counsel for defendant objected on the ground that this was a comment on defendant's failure to testify and moved for a mistrial. The court sustained

---

**1.** " * * * evidence having been presented that the Defendant has pleaded guilty to or has been found guilty of two or more felonies committed at different times, accordingly, the Defendant is found to be a Persistent Offender and the Defendant may be sentenced to serve an extended term of imprisonment. * * * "

the objection but denied the mistrial motion. In final summation the prosecutor said, "There has been no evidence presented to the contrary. You have not seen any of the fifteen people from the barbeque come in and testify he (defendant) was all over the apartment. * * * If the defendant would have been in that bedroom at any time don't you think the defense would have been presented, and given you evidence that he had been in that bedroom?" An objection was sustained but neither then nor after the preceding ruling did defendant's counsel move that the argument be stricken from the record or that the jury be instructed to disregard it.

■ While it is improper as a violation of a defendant's constitutional rights to comment on the failure of the defendant to testify, it is not improper for the prosecutor to comment on the defendant's failure to offer evidence on his behalf. *State v. Robinson,* 641 S.W.2d 423 (Mo. banc 1982); *State v. Morgan,* 444 S.W.2d 490 (Mo.1969); *State v. Rinehart,* 646 S.W.2d 827 (Mo. App.1982); *State v. Hutton,* 645 S.W.2d 22 (Mo.App.1982). The prosecutor's comments fall within the latter category. He was referring to defendant's failure to present evidence, not to defendant's failure to testify. If defendant had been the only person who could have testified to facts which would have exonerated him the prosecutor's comments might be subject to the interpretation appellant places upon them, but defendant was not the only person who could have given evidence accounting for his fingerprints on the mug. Any of the fourteen other guests attending the barbeque party might have shed light on the question whether defendant entered the bedroom where he could have touched or handled the mug, but none of the fourteen was called by defendant to give testimony contradicting the State's evidence that defendant had never been in the bedroom prior to March 26, 1981.

By making the "no evidence" comment three times the prosecutor came close to giving undue emphasis to the argument, but the trial court has substantial discretion in monitoring closing argument and determining whether comments are prejudicial, *State v. Williams,* 588 S.W.2d 70, 74 (Mo.App.1979), and we find no abuse of discretion in this situation.

■ Appellant asserts error in sustaining the State's objections to cross-examination of Timothy Person for the purpose of implicating an individual other than defendant as the perpetrator of the crimes. Cross-examination revealed that Person knew one N.R., a former tenant who previously lived in the apartment complex; that N.R. had a Chevrolet automobile; that after the burglary Person informed police that N.R.'s car had been at or near the apartment building on the day of the burglary and that N.R. knew the layout of Person's apartment. At that point the court sustained the prosecutor's objection to defense counsel's question whether Person had advised police that N.R. knew the contents of Person's apartment; refused defendant's offer of proof based on the theory that this evidence would "impeach the investigative techniques and the testimony of the police officers;" struck the previous questions and answers relating to N.R., and instructed the jury to disregard them. Appellant claims these rulings violated his constitutional right of confrontation of witnesses by means of full and effective cross-examination.

The court did not err. "Evidence that another person had an opportunity or motive to commit the crime for which defendant stands charged is inadmissible absent a foundation that the third person committed some act directly connected with the crime." *State v. Williams,* 575 S.W.2d 838, 840 (Mo.App.1978). No such foundation was laid. At most the testimony created a bare suspicion or conjectural inference, which under Williams is not enough. See the following cases in which the evidence was held insufficient to establish such a foundation. *State v. Stokes,* 638 S.W.2d 715, 723 (Mo.banc 1982); *State v. Cameron,* 604 S.W.2d 653, 660 (Mo.App. 1980); *State v. Williams, supra,* l.c. 840. Nor was the evidence admissible for the

purpose of impeachment. The investigative techniques of the police officers were irrelevant, not the subject of impeachment and involved a collateral matter. *State v. Diamond,* 532 S.W.2d 873, 875 (Mo.App. 1976); *Hungate v. Hudson,* 185 S.W.2d 646, 649 (Mo.1945).

■ Appellant claims the court erred in overruling objections to the prosecutor's questions on voir dire and in final argument in that the prosecutor improperly and incorrectly injected erroneous and confusing statements of law relating to the definition of "reasonable doubt." After asking the prospective jurors whether they would hold the State to a higher or lower standard of proof than beyond a reasonable doubt the prosecutor asked the panel whether they all understand that "no one can tell you—no prosecutor, no defense attorney, not even the Judge, can tell you what is or what is not a reasonable doubt. Do you all understand that it is for the twelve of you who render a verdict to decide?" An objection was overruled. In closing argument (unobjected to) the prosecutor said, "I ask when you go back, discuss it and ask yourselves—no one can tell you what is reasonable doubt. I can't tell you. The lawyers can't. The Court can't. These instructions don't. You will decide whether or not the State has proven the defendant's guilt beyond a reasonable doubt, and what does it mean in this particular case." The prosecutor then suggested that after the case was over the jurors tell their spouses and friends what the evidence was in this case and what the verdict was, and then said. "I guarantee if you return a verdict of not guilty in this case on this evidence, you will not feel very reasonable telling them that verdict."

The thrust of appellant's contention is that the prosecutor was defining the law of reasonable doubt, and that under the authorities this is not the prerogative of counsel. The point has no merit. The prosecutor was not *defining* reasonable doubt, nor was he giving the panel his interpretation of what the term means. To the contrary, he expressly disclaimed any effort to tell the jury what reasonable doubt is or is not. His further statement that it was for the jurors to decide what is a reasonable doubt and to determine what is beyond a reasonable doubt was an accurate and correct statement. It is beyond cavil that such a determination is a wholly subjective matter for each individual juror. The prosecutor's guarantee that the jurors would not "feel very reasonable" about a not guilty verdict on this evidence did not constitute a definition of reasonable doubt and is of no consequence on this appeal.

The most that can be said of these remarks is that the prosecutor was *discussing* the subject of reasonable doubt, without defining the term. This is not improper, *State v. Broomfield,* 637 S.W.2d 711, 714 (Mo.App.1981), and a prosecutor's remarks of a similar nature have been upheld as a permissible discussion of reasonable doubt. *State v. Overkamp,* 646 S.W.2d 733, 738 (Mo.1983).

■ Appellant's fifth point proposes error in overruling a defense objection to a question posed to the State's fingerprint expert. Officer Pyatt testified that he examined the latent fingerprints marked A and B—prints of a left thumb and a left index and left middle finger lifted at the scene of the crimes, for workable fingerprints that could be identified; that lifts A and B were identifiable pieces of evidence, and that he made his identification off the known inked impressions taken from the defendant's thumb and fingers after defendant was taken into custody—that they were from the same person, positively and without any doubt. The prosecutor then handed the expert the glass mug and asked whether he could tell from the character of the lift B and from his analysis of lift B "when lift B was on there in relation to other parts of the glass". The defense made an objection on the ground of relevance; that there was no testimony about the glass being in the same condition then that it was a year and a half before; that it had been handled by half the prosecutor's office just in the last day; that the question called for an answer beyond the exper-

tise of the witness. The court overruled the objection. The expert answered that fingerprints will develop and build up on top of each other; that overlay is when an object is touched continuously, resulting in distortion and destruction of fingerprints as fingerprints are touched; that in his opinion the fingerprints he identified were "one of the last things on the glass itself, placed on the glass." He was led to that opinion by *examining the print itself,* "the buildup of the background of these particular ones, and these particular prints I identified were very strong, and in a sense stood out stronger than the other fingerprints on the particular piece of glass." He further testified that lift B (left index finger and left middle finger) "was one of the last things on that particular piece of glass, the strongest piece of evidence I found", based on the strength, boldness and darkness of the print itself. On cross-examination it was made clear that the expert had not seen the mug itself until the time of trial; that the only thing he had was the two pieces of evidence in front of him; that what he examined were fresh prints; that the two lifted tape impressions were bolder and stronger than the other prints *on this particular piece of evidence.* On redirect examination this testimony was further elucidated by the expert's testimony that in his opinion lift B was a more recent print because it was bolder and stronger than what surrounded that particular piece of evidence—"stronger than the background part of the print itself"; that "it looked like this particular piece of evidence from the background itself has been touched several different times; time after time after time, which we refer to as smudges; and some has [sic] destroyed the others and distorted it, and has actually left just pieces of fragments of fingerprints on there. The ones I am referring to, and I identified, were, in my opinion, were on top of that in much bolder—and definitely could be identified as the subject's fingerprints."

Appellant excepts to the testimony concerning freshness of the fingerprints; contends that the officer's testimony inferred

that he had examined the beer mug at the time he made the identification; asserts that no proper foundation was laid for a hypothetical question, and says the questions called for conjecture. We find no abuse of the court's discretion in admitting this testimony. A reading of the testimony of the expert, taken as a whole, indicates without question that Officer Pyatt did not base his opinion upon an examination of the beer mug itself; that he did not represent that he had seen the mug before the day of the trial; that he confined his opinion to his examination of the latent taped impressions; that his testimony about other prints underlying the incriminating prints referred to prints in the background of lift B—prints in the area surrounding the bolder, darker and fresher prints which matched defendant's known prints, and did not refer to prints he had seen on the beer mug itself.

■ Appellant's last point: the court erred in overruling appellant's motion for acquittal at the close of the evidence for failure to make a submissible case. Appellant points out that there were no eyewitnesses; defendant was not seen at or near the scene of the crimes; was not found in possession of any of the several items of stolen property; the evidence was circumstantial; defendant's guilt was not shown beyond a reasonable doubt but was based on two fingerprints, the time of deposit of which was uncertain; the State's evidence failed to eliminate any reasonable hypothesis of defendant's innocence and the State's evidence showed that defendant was a frequent visitor in the complaining witness' apartment and had an opportunity to touch the beer mug at other times than on the date of the burglary. Appellant concedes that a burglary occurred; he challenges only the sufficiency of the evidence connecting him with the crimes.

The evidence identifying defendant as the perpetrator was the fingerprints lifted from the glass beer mug the victim kept in his bedroom, which was half full of coins when the victim left his apartment to go to work that morning and was empty when he

returned home that afternoon. That same day the scene of the crime was processed for fingerprints and the fingerprints above described were lifted. An expert testified that the age of fingerprints can be determined within a certain time span; that the prints lifted at the scene of the crimes were "relatively fresh, as opposed to being several weeks old. By relatively fresh I mean several days." The State's evidence showed that defendant had not been in the apartment during the past three or four weeks, and had never been in the master bedroom where the beer mug was always kept. Person testified he handled the beer mug virtually every day; that when he would come home he would put any loose change in the beer mug. The evidence established that when an object is continuously handled over and over again earlier fingerprints are distorted, "smudged" or destroyed by later fingerprints and that defendant's prints lifted from the mug the afternoon of the burglary were fresh, bold and strong, and were one of the last things on the glass beer mug. " * * * (W)hen fingerprints are found at the scene of the crime and in a place not generally accessible to the defendant absent the intervention of criminally culpable conduct on his part, the jury may infer guilt and such evidence would be sufficient to sustain a conviction." *State v. Blair*, 631 S.W.2d 91, 94 (Mo.App.1982). Evidence that defendant's fresh fingerprints were found at the scene of the crime at a place not generally accessible to defendant under the circumstances of this case, was sufficient to make a submissible case from which the jury could infer that defendant was guilty of the crimes charged against him, and sufficient to exclude any reasonable hypothesis of his innocence. *State v. Moore*, 536 S.W.2d 926 (Mo.App.1976); *State v. Gray*, 504 S.W.2d 825 (Mo.App.1974).

The judgment is affirmed.

GAERTNER, P.J., and SMITH, J., concur.