**STATE of Missouri, Respondent,**

v.

**Ronald Chris HILL, Appellant.**

No. 18234.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 22, 1993.

Brad B. Baker, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stacy L. Anderson, Asst. Atty. Gen., Jefferson City, for respondent.

MONTGOMERY, Judge.

Ronald Chris Hill (Defendant) was convicted by a jury on April 30, 1992, of murder in the second degree, § 565.021.1(1).[1] He was sentenced to a fifteen-year term of imprisonment as recommended by the jury.

Defendant appeals to this Court and raises the following four allegations of error:

(1) That the evidence was insufficient to support the verdict;

(2) That the prosecutor made statements during the trial, unsupported by the evidence, designed to inject irrelevant considerations into the jury's decision-making process;

(3) That a photograph depicting a gunshot wound to the victim's body was inadmissible; and

(4) That Instruction No. 4 erroneously defined the term "reasonable doubt."

Relevant portions of the information charged that "on or about April 19, 1985, . . . defendant knowingly or with the purpose of causing serious physical injury to Tony Barger caused the death of Tony Barger by shooting him."

"A person commits the crime of murder in the second degree if he: (1) Knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person; . . . ." § 565.021.1(1).

Defendant's first point is that the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence, because the evidence was insufficient "to convince a rational trier of fact that [Defendant] knowingly caused the death of Tony Barger or, with the purpose of causing serious physical injury to Tony Barger, caused the death of Tony Barger."

1. Statutory references are to RSMo 1986 unless otherwise indicated.

■ In reviewing Defendant's challenge to the sufficiency of the evidence, this Court will consider

the evidence and all reasonable inferences supportive of the verdict in the light most favorable to the verdict, and disregard those portions of the record contrary to a finding of guilt. We will not weigh the evidence nor determine the credibility of the witnesses. The test is whether the evidence, so viewed, was sufficient to make a submissible case from which rational jurors could have found beyond a reasonable doubt that appellant was guilty.

*State v. Whittle*, 813 S.W.2d 336, 337 (Mo. App.1991) (citations omitted).

■ Viewed in this light, the evidence establishes that shortly after 12:00 a.m. (midnight) on April 19, 1985, Defendant and Jim Keener entered the King of Clubs Bar in Joplin, Missouri. Defendant was employed by Keener as manager of Keener's Rustler's Rest Bar in Galena, Kansas. Ed Sewell, a State witness, testified that part of Defendant's job was to "be with" Keener and "take care of" him because Keener "got drunk a lot." Sewell had previously worked for Defendant and Keener as a doorman at the Rustler's Rest Bar and was a friend of both men.

After entering the King of Clubs, Keener sat down at the end of the bar. Already present in the bar were Tony Barger, the victim, and Mike Streight, his friend. Bad blood existed between Barger and Keener because Keener had reportedly "slapped" Barger's mother around in the Rustler's Rest Bar. Barger and Streight approached Keener and exchanged heated words with him. After threatening Keener, Barger knocked him off his bar stool. While Keener was on the floor, Barger and Streight began kicking and beating him. Defendant became involved in the struggle before Ed Sewell and a bouncer broke up the affray. Barger and Streight were pushed out the front door where a crowd then gathered. At that point, Defendant and Keener remained inside the bar.

According to Defendant's trial testimony, he found a cocked, two-shot derringer pistol on the barroom floor near the place where the fight originated. With the derringer concealed at his side, Defendant walked out the door where the crowd had gathered.

Outside, Sewell was standing about three feet in front of Barger attempting to calm him down. While looking at Barger, Sewell heard a shot, saw Barger's shirt move and immediately looked to his left. He saw Defendant holding a gun in his hand at about shirt-pocket height. Sewell grabbed Defendant's wrist and wrested a .38 caliber derringer from him. Sewell testified he recognized the derringer as belonging to Keener because he had seen it in Keener's possession at the Rustler's Rest Bar. When the police arrived, Sewell gave the derringer to one of the officers.

Kelli Prendes, one of Barger's friends, was in the bar when she heard a shot. She ran outside, saw Barger leaning on a woman for support and stumbling backwards. Barger fell down into a sitting position where Prendes attempted to give him aid and comfort. Barger told Prendes that Defendant shot him and that he was not going to make it.

Barger died later that evening from a single gunshot wound to his chest. The cause of his death was established by a pathologist's report (admitted in evidence by agreement of the parties).

A criminologist, Dr. Phillip Whittle, testified that he compared a bullet test fired from the top barrel of the derringer taken from Defendant to the bullet removed from Barger's body. In his opinion, markings on the bullets matched sufficiently to indicate the fatal bullet was fired from the derringer recovered from Defendant.

Immediately after the shooting, Defendant disappeared. He was captured in October 1990 in Lawton, Oklahoma. Upon his arrest, he told the arresting officer, "It took you five and a half years to get me, but I'm glad it's over."

The jury did not believe Defendant's version of the shooting. Defendant testified that he went outside the bar intending to give the derringer to one of the bouncers. He claimed that the shooting occurred acci-

dentally when Danny Shipley, a different bouncer, bumped his arm. Shipley's testimony contradicted Defendant's story.

Defendant, as we understand him, argues in his first point that the State's proof on the issue of his culpable mental state was insufficient to make a submissible case. He says that, on the one hand, the State's case was based upon the assumption that he was Keener's "bodyguard," but, on the other hand, no evidence was presented that he was employed to protect Keener. Defendant seems to argue that his intent to kill Barger could only arise from clear evidence that he was Keener's bodyguard. We disagree.

As noted, "A person commits the crime of murder in the second degree if he ... [k]nowingly causes the death of another person...." § 565.021.1(1). Under § 562.016.-3(2), a person "knowingly" causes the death of another person if "he is aware that his conduct is practically certain" to cause death. *State v. Harris*, 825 S.W.2d 644, 647 (Mo. App.1992).

Firing a weapon at close range, aimed at a vital part of the victim's body, supports an inference that the defendant was aware his conduct was practically certain to cause death. *State v. Mallett*, 732 S.W.2d 527, 533 (Mo. banc 1987), *cert. denied*, 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987); *State v. Light*, 835 S.W.2d 933, 936 (Mo.App.1992).

Here, Defendant fired a pistol at the victim at close range inflicting a lethal wound in the victim's chest. This evidence supports a jury finding that Defendant knowingly fired the pistol, aware that his actions were practically certain to cause the death of Barger. Point I has no merit.

In his second point, Defendant claims that the trial court erred in failing to declare a mistrial because the evidence did not support the prosecutor's statements that Defendant was Keener's bodyguard and because such statements injected irrelevant considerations in the jury's decision-making process.

In his opening statement, the prosecutor remarked that after Keener and Defendant walked in the bar, Barger said, "There's his little bodyguard," referring to Defendant. Defense counsel objected and requested a mistrial, which the trial court denied.

During trial, the prosecutor elicited no testimony concerning Barger's "bodyguard" statement but did offer Ed Sewell's testimony that part of Defendant's employment with Keener was to "be with" and "take care of" Keener. This evidence is consistent with the prosecutor's earlier assurance to the trial court that he would offer evidence of the relationship between Defendant and Keener. Based on that assurance, the trial court had denied Defendant's requested mistrial.

The primary purpose of an opening statement is to give the court and jury a general outline of the anticipated evidence and its significance. *State v. Nelson*, 831 S.W.2d 665, 666 (Mo.App.1992). The prosecutor has a duty of good faith to describe in his opening statement only the material facts that will be proved by evidence. *State v. Turner*, 633 S.W.2d 421, 425 (Mo.App.1982).

> The scope and manner of opening statement is largely within the control of the court which must exercise discretion based on reliance upon the good faith of counsel. When error is claimed in the exercise of the trial court's discretion to control opening statement, no error requiring reversal will be found if the challenged statement refers to arguably admissible evidence and the reference was made in good faith with a reasonable expectation the evidence would be produced.

*State v. Burton*, 721 S.W.2d 58, 61 (Mo.App. 1986).

Here, the prosecutor's challenged statement refers to arguably admissible evidence. As the State urges, Sewell's testimony concerning Defendant's relationship with Keener was arguably admissible to show that Defendant had a motive to take action against Barger in order to protect Keener.[2] Motive can be relevant in a criminal prosecu-

---

**2.** We do not decide whether Barger's statement that Defendant was Keener's "little bodyguard" was inadmissible hearsay, because Defendant's point fails to raise that issue. Our review is limited to matters raised in the points relied on. *State v. Hill*, 812 S.W.2d 204, 208 (Mo.App. 1991).

tion even if it is not an element of the crime charged. *State v. DeWeese*, 751 S.W.2d 389, 393 (Mo.App.1988).

Relying on *Burton*, Defendant claims the prosecutor failed to act in good faith with a reasonable expectation that admissible evidence would be produced to support the "bodyguard" statement. As we understand him, Defendant argues that Barger's statement was inadmissible hearsay and that the prosecutor introduced no other evidence on the subject. This argument ignores Ed Sewell's testimony. Clearly, the prosecutor introduced testimony from Sewell bearing on Defendant's status as a bodyguard. Nowhere does Defendant assert that his responsibility to "be with" and "take care of" Keener is not the function of a bodyguard. The prosecutor broached this subject in good faith, knowing of the availability of Sewell's testimony and having a reasonable expectation that such testimony was admissible. We find no abuse of discretion in the trial court's ruling.

Next, Defendant claims that the prosecutor returned to the "forbidden" bodyguard subject in his closing argument when he made the following statement:

> We've heard evidence that [Defendant] worked for Jim Keener. We've heard evidence that it was [Defendant's] job to take care of Jim Keener. And, boy, is that what he did. He took care of Jim Keener, he sure did, by taking care of Tony Barger.

■ This argument did not lack evidentiary support in view of Ed Sewell's testimony. The trial court has broad discretion in determining the propriety of closing arguments, and absent clear abuse thereof, appellate courts will not intervene. The prosecution must stay within the confines of the evidence and reasonable inferences therefrom. *State v. Hawkins*, 690 S.W.2d 198, 201 (Mo.App.1985). We find no abuse of trial court discretion since the prosecutor argued only reasonable inferences from the evidence

concerning Defendant's responsibilities toward Keener. Point II is without merit.[3]

In point III, Defendant alleges that the trial court erroneously allowed the introduction of a photograph, State's Exhibit 4, depicting a gunshot wound to the chest area of the victim's body.

As the State points out, the photograph was not admitted over Defendant's objection. When the State offered the photograph, defense counsel plainly stated, "No objections." The State then requested permission to pass this and several other photographs to the jury, and defense counsel again failed to object. The only objection to the photograph occurred earlier, during the conference on challenges to the jury panel. There, defense counsel claimed the photograph was redundant because "I think there will also be a stipulation that Mr. Barger is the one who was killed and that he died of a gunshot wound to the chest." After overruling the objection, the court complied with defense counsel's request to show his objection continuing through the opening statement.

■ In order to preserve any error for review, an objection must be made when the object is offered in evidence. *State v. Nevels*, 712 S.W.2d 688, 691 (Mo.App.1986). Without an objection, review is limited to plain error that affects substantial rights and results in manifest injustice or miscarriage of justice. *Id.* *See* Rule 30.20.

■ Trial courts have broad discretion in the admission of photographs. *State v. Schneider*, 736 S.W.2d 392, 403 (Mo. banc 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988). Photographs are generally admissible if they are relevant to a material issue. *State v. Murray*, 744 S.W.2d 762, 772 (Mo. banc 1988), *cert. denied*, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988). Photographs, even though gruesome, are considered relevant and admissible if they show the nature and location of wounds, enable the jury to better understand the testimony, or aid in establishing any element

---

**3.** In the argument section of his brief on point II, Defendant asserts that Sewell's testimony was inadmissible. This hypothesis of error does not appear in his point relied on. A claim of error not set forth in a point relied on preserves nothing for appellate review. *State v. Adams*, 808 S.W.2d 925, 930 (Mo.App.1991).

of the State's case. *State v. Feltrop*, 803 S.W.2d 1, 10 (Mo. banc 1991), *cert. denied*, — U.S. —, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). Here, the photograph showed the location of the wound to Barger's chest and that the location was consistent with Sewell's testimony concerning where Defendant pointed and fired the pistol. Thus, the photograph was an aid to the jury in understanding this testimony.

 Contrary to Defendant's assertion, the photograph was not cumulative, gruesome, or unduly inflammatory. It merely depicted the unclothed upper half of Barger's body and revealed a small circular wound in the chest. The photograph is far less repulsive than the photograph found admissible in *State v. Burton, supra*. There, the photograph depicted a corpse with only a portion of the head remaining after a shotgun blast. The Court noted that the photograph revealed the violence and effect of the shooting and said that the defendant "is not entitled to complain of a portrayal which is accurate merely because the consequences of the crime are shocking to persons of ordinary sensibilities." 721 S.W.2d at 63. Furthermore, the State is not precluded from introducing the photograph simply because the defendant is willing to stipulate to some of the issues involved. *Feltrop*, 803 S.W.2d at 10. Gratuitous review of this point discloses no plain error.

Defendant's last point is that the trial court erred in giving Instruction No. 4, based on MAI–CR 3d 302.04, because the instruction erroneously defined "reasonable doubt." In *State v. Blankenship*, 830 S.W.2d 1, 13 (Mo. banc 1992), the Court rejected the same contention and said that the instruction has been upheld repeatedly. Point denied.

The judgment is affirmed.

PARRISH, C.J., and SHRUM, J., concur.