STATE of Missouri, Respondent,

v.

Louis JORDAN, Appellant.

Louis JORDAN, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 73034, 73070.

Missouri Court of Appeals,
Eastern District,
Division Five.

Oct. 6, 1998.

**38**

Gwenda R. Robinson, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gregory L. Barnes, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

Defendant, Louis Jordan, appeals after a verdict and a sentence to serve six years as a prior and persistent offender on a charge of unlawful use of a weapon. Section 571.030 RSMo Cum.Supp.1997. We granted leave to file a late appeal. The state charged Defendant with flourishing a handgun in an angry or threatening manner at his ex-girlfriend. Defendant claims that the trial court erred in: (1) overruling his motion in limine to exclude (a) evidence of uncharged crimes, and prior bad acts, and (b) a 911 tape; (2) sustaining the state's motion to exclude the testimony of a defense witness; (3) overruling his motion to suppress a gun; and (4) allowing the state to introduce evidence sufficient to support a finding that he is a prior and persistent felony offender after the case had been submitted to the jury. We affirm.

There was evidence to support finding the following facts. During the summer of 1994, after she broke up with her boyfriend, L.M. engaged in sexual relations with Defendant. On April 2, 1995, L.M. gave birth to a baby. The baby's father was not identified by a paternity test. Defendant believed he was the father. L.M. did not believe that Defendant was the father. She believed the father of her four-year-old was also the father of her baby. However, L.M. and Defendant often met to discuss the baby and the baby's paternity. They agreed to have a paternity test performed. L.M. also agreed to allow Defendant to visit her baby, but only during the day. However, Defendant came over whenever he pleased, usually at odd hours of the evening. L.M. had a problem with these visits. When she told Defendant that she had a problem with his visits, he became upset.

On July 9, 1996, when L.M. arrived home from dinner with her current boyfriend and her two children, Defendant was knocking on her door. Defendant saw L.M. pull up to the house. He approached the passenger side of the car, the side in which L.M. was sitting. He began cursing and screaming at her. He demanded to know when the paternity test was going to be performed. The driver tried to calm Defendant. Defendant became very angry. L.M. and her children got out of the car and walked to her aunt's house to call the police. Defendant approached L.M. on the sidewalk, pointed a semi-automatic pistol at her and threatened to kill her. L.M. believed that Defendant was going to shoot her. On prior occasions, L.M. had seen Defendant with a gun. L.M. went to her aunt's house to call the police. She told the 911 operator that he had been there before and that he had a gun. Before the police arrived, Defendant apologized to L.M.'s boyfriend and drove away in his brown Ford Tempo.

Police arrived approximately fifteen minutes after the call. Shortly thereafter, they arrested Defendant who was hiding in bushes about three blocks away from L.M.'s residence. They searched Defendant but did not find a weapon. They noticed a vehicle that fit the description of the car in which Defendant fled with the gun. It was unlocked with the windows down. They searched the vehicle and found a gun in a bag on the front seat. The gun contained a clip and five rounds of ammunition. The crime lab subsequently testified the weapon still operated.

Defendant had previously harassed and stalked L.M.. On one occasion, he broke a window at L.M.'s residence when she refused to let him inside. On another occasion, he went to her residence and when she again refused him entry, he became very angry, pulled her out of the house and slapped her on the face. Another incident involved Defendant following L.M. in his car for six or seven blocks when she arrived home from bowling with a friend.

Prior to trial, Defendant argued a motion in limine to exclude the 911 tape in which L.M. refers to other incidents of harassment and prior bad acts by Defendant. The state argued that the tape was admissible as evidence of motive or intent. The court overruled Defendant's motion. The tape was admitted without objection. A jury convicted Defendant of unlawful use of a weapon. The court sentenced him as a prior and persistent offender to six years.

In his first point on appeal, Defendant argues the trial court erred when it overruled his motion in limine to exclude Defendant's uncharged crimes, prior bad acts, and L.M.'s 911 tape. He argues the alleged uncharged crimes and prior bad acts were not similar to the charge of knowingly exhibiting a weapon to be probative of Defendant's guilt of the charged crime. Defendant claims that the admitted evidence was more prejudicial than probative.

 Ordinarily, a ruling on a motion in limine is not appealable. *State v. Dwyer*, 847 S.W.2d 102, 103 (Mo.App. W.D.1992). A motion in limine in and of itself presents nothing for appeal. *Id.* "A claim of error not set forth in a point relied on preserves nothing for appellate review." *State v. Hill*, 866 S.W.2d 160, 164 n. 3 (Mo.App. S.D.1993). Defendant's only claim of error is the trial court's ruling on his motion in limine. Defendant does not claim or argue any error regarding an objection at trial, thus he does not present an appealable claim of error. Point denied.

Defendant argues in his second point that the trial court abused its discretion in sustaining the state's Rule 25.16 motion to exclude testimony of Defendant's uncle as a defense witness. Defendant lived with his uncle and always knew that he could be a potential witness. Defendant failed to identify this witness during discovery. He argues the proposed testimony is crucial to his defense to impeach a state's witness and to explain the reason he carried a gun. The court refused to permit the testimony of a witness first identified on the second day of trial.

 "The trial court has discretion in determining whether a witness should be permitted to testify and we review only for an abuse of discretion which results in fundamental unfairness." *State v. Bolen*, 731 S.W.2d 453, 460 (Mo.App.1987); *State v. Lopez*, 836 S.W.2d 28, 32 (Mo.App. E.D.1992). In *Bolen*, the defendant claimed the trial court erred in denying defendant's father a chance to testify. *Id.* The father was not an endorsed witness prior to trial. *Bolen*, 731 S.W.2d at 460. We recognized that "all of the offered facts were known or could have been known by defendant before trial." *Id.* at 461. We held that there was no abuse of discretion or fundamental unfairness. *Id.*

 In *State v. Lopez*, defendant moved to endorse a witness on the second day of trial, after the state's two primary witnesses had testified. *Lopez*, 836 S.W.2d at 32. We recognized that the exclusion of witness testimony is within the broad discretion of the trial court and the decision will be disturbed on appeal only when it causes fundamental unfairness to the defendant. *Id.* In criminal proceedings, the presumption that all errors are prejudicial is not conclusive and can be overcome by facts and circumstances of a particular case. *Id.* In determining whether a defendant is prejudiced by excluding witness testimony, "the facts and circumstances of the particular case must be examined including: (1) the nature of the charge; (2) the evidence presented; and (3) the role the excluded evidence would have played in the defense's theory." *Id.* Considering these factors, we held there was no abuse of discretion in denying the late endorsement. *Id.* at 34.

 In this case, Defendant knew before trial that his uncle was a possible witness. He lived with his uncle and, of course, knew his whereabouts. Thus, the facts support a requirement for requested disclosure. *Bolen*, 731 S.W.2d at 460, 461. Defendant argues that his uncle's testimony is necessary to his defense to explain why he had the gun and to impeach a state's witness. He argued his uncle had been an unwilling witness prior to trial, thus it was counsel's strategy not to endorse him as a witness. The judge concluded that if the uncle was willing to help

his nephew, he would not have waited until the last minute to decide to testify. If prejudice resulted, the judge determined that Defendant caused it to occur.

The record indicates Defendant made a sufficient offer of proof after the judge denied defense witnesses testimony. *Lopez*, 836 S.W.2d at 33. He said his uncle would testify that it was not until after Defendant returned home from L.M.'s house that his uncle advised him he should carry a gun; and that Defendant placed the gun in the bag in his car when the police arrived at his house. At most, this would have been evidence that the police seized a gun which was not in Defendant's possession when he was in the vicinity of L.M.'s home. It would not have directly countered the eye witness testimony that he had a gun. After Defendant's specific offer of proof, the judge again sustained the objection. It is well within the trial court's discretion to exclude the testimony. Furthermore, at trial there was eyewitness testimony that Defendant flourished a gun at L.M.. We find no abuse of discretion and no fundamental unfairness in excluding Defendant's witness testimony. Point denied.

In his third point, Defendant argues the trial court erred in overruling Defendant's motion to suppress the gun taken from his car. The state justified the search as a matter of exigent circumstances. Defendant argued there were none. He argued that the evidence was obtained in violation of his rights under Article I, sections 10, 15, 18(a) of the Missouri Constitution, the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution, and section 542.261 et seq. RSMo 1994. The day of trial, Defendant argued and lost the motion to suppress evidence.

The state offered sufficient evidence to support all elements of the charge. Section 571.030 Cum.Supp. RSMo 1997. L.M.'s boyfriend testified that "[Defendant] walked towards her with a – what appeared to be a handgun and I would say about to shoot." This evidence was received without objection. She testified, without objection, "when I got to the sidewalk [Defendant] turned and he pointed a gun at me, said he was going to kill

me." The jury as trier of fact weighs this evidence in making their decision. Introduction of the gun into evidence was unnecessary.

The state offered the gun into evidence. It was admitted without any objections on constitutional grounds. Rather, Defendant objected to some "black markings" on the evidence bag containing the gun. It is not clear what the intended legal objection may have been, perhaps a defect in chain of custody. In his motion for new trial, Defendant argued that the trial court erred in denying his motion to suppress the gun on constitutional grounds.

■■■■ When a pretrial motion to suppress evidence is denied and the evidence is subsequently admitted at trial, the defendant must renew the objection(s) or make a specific objection to preserve the issue for appellate review. *State v. Tidwell*, 888 S.W.2d 736, 740 (Mo.App. S.D.1994); *State v. Powell*, 793 S.W.2d 505, 508 (Mo.App.1990). "A point on appeal regarding admissibility of evidence must be based on the theory of the objection made at trial." *Tidwell*, 888 S.W.2d at 740. Defendant in this case did not make a specific legal objection at trial. Nor did he renew the motion to suppress. Accordingly, our review of the issue is restricted to "plain error affecting substantial rights resulting in manifest injustice or miscarriage of justice." *State v. Holt*, 695 S.W.2d 474, 477 (Mo.App. 1985).

■■■■ Here, the police arrested Defendant, and then seized the gun from his car located approximately twenty-five feet from him. The "automobile exception" authorizes police to perform warrantless searches of vehicles and seize contraband found if "(1) there is probable cause to believe that the vehicle contains contraband and (2) exigent circumstances necessitate the search." *State ex rel. Boling v. Malone*, 952 S.W.2d 308, 311 (Mo.App. W.D.1997). "Exigent circumstances exist because of 'the mere possibility that the vehicle can be moved'." *Id.*

■■■■ Officer Thomas testified that on the evening of July 9, 1996 she responded to a call from L.M.'s residence. Upon arriving at L.M.'s home, L.M. gave her a description of

Defendant and told her Defendant had been at her house with a weapon and left in a brown Ford Tempo with the weapon. Thomas and another officer left to find Defendant. They found Defendant at his home hiding in some bushes. They arrested him. A car fitting L.M.'s description of the vehicle Defendant was driving was located about twenty-five feet from Defendant. The officers detained and frisked Defendant, but did not find a weapon on his person. Thereafter, Thomas searched the vehicle, which was unlocked with the windows down. She found the gun in a bag on the front seat.

In determining whether probable cause was met, we deal with probabilities. *State v. Hill*, 854 S.W.2d 814, 817 (Mo.App. S.D. 1993). We must consider "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* Here, the police officers had eyewitness information that Defendant fled in a brown Ford Tempo with a weapon in hand. After they arrested him, the officers noticed a car fitting the description of what L.M. reported to them. When they did not find the weapon on Defendant's person, they had facts to support a finding that had probable cause to search Defendant's vehicle. Exigent circumstances for the search of a vehicle may exist because of the mere possibility that it can be moved. *State ex rel. Boling*, 952 S.W.2d at 311. The police had both probable cause and exigent circumstances to conduct the warrantless search. *Id.* Point denied.

In his fourth point, Defendant argues the trial court erred in allowing the state to introduce evidence sufficient to support a finding he was a prior and persistent felony offender because it was offered after the case had been submitted to the jury. He argues this violates section 558.021 RSMo 1994. In support of his argument, Defendant relies on *State v. Martin*, 882 S.W.2d 768, 771 (Mo. App. E.D.1994) for the proposition that section 558.021 dictates that the convictions alleged in the indictment or the information must be supported by proof which conforms with the charge. We did make that ruling in *Martin*. However, *Martin* is inapposite. In *Martin*, not only were the dates of the charges alleged in the information different from those mentioned in evidence, but the convictions were for different crimes. *Martin* discussed cases in which the defendant was found to be a prior and persistent offender where only the dates of the convictions alleged in the indictment were different from that introduced at trial. *Id.* Those cases held that "the variance did not prejudice defendant and therefore was not fatal to sentence enhancement." *Id.citing State v. Cullen*, 646 S.W.2d 850 (Mo.App.1982). In another case cited by this court in *Martin*, we held that defendant would be prejudiced by a variance between the charges and dates of guilty pleas and proof of prior convictions if he was misled or handicapped in preparation of his defense. *Martin*, 882 S.W.2d at 772, *citing State v. Franklin*, 547 S.W.2d 849 (Mo.App.1977).

■ Here, the information alleged a prior conviction on July 28, 1988. The state introduced evidence of a conviction on October 28, 1988. The crime alleged in the charge, which resulted in a conviction, was the same as that introduced by the state. Defendant has not identified any prejudice. He suffered no prejudice. His argument fails. *Martin*, 882 S.W.2d at 771 – 772.

■ Defendant also argued that he was prejudiced by having a hearing on his prior convictions after the case was submitted to the jury. The supreme court held in *State v. Kilgore*, 771 S.W.2d 57, 64 (Mo. banc 1989) that a hearing on prior offenses held untimely was harmless error and did not affect substantial rights. However, the question remains was the error prejudicial? *State v. Wynn*, 666 S.W.2d 862, 864 (Mo.App.1984). In *State v. Wynn*, the persistent offender hearing issue was ignored at trial and was not resolved until forty-two days later at defendant's sentencing. *Id.* at 864. At sentencing, the court found that the defendant was a persistent offender. *Id.* We held that it was harmless error. *Id.* at 864. We recognized that "the central fact of importance and substance is that defendant is a persistent offender, as amply demonstrated, in which case the Court, not the jury determines punishment upon a finding of guilt." *Id.* In this case, the state offered evidence to

support a finding that Defendant was a prior and persistent offender. Although the court determined Defendant's prior and persistent status after the case had been submitted to the jury, he suffered no actual prejudice. *Id.* Point denied.

We affirm.

ROBERT G. DOWD, Jr., C.J., and CHARLES B. BLACKMAR, Senior Judge, concur.